**TODD SHIPYARDS CORPORATION,**
Plaintiff-Appellee Cross-Appellant,

v.

**AUTO TRANSPORTATION, S.A.,**
Intervenor-Appellee,

v.

**TURBINE SERVICE, INC., et al.,**
Defendants-Appellants
Cross-Appellees.

No. 84–3589.

United States Court of Appeals,
Fifth Circuit.

June 24, 1985.

Fred E. Salley, Estelle E. Mahoney, New Orleans, La., for Travelers Ins. Co., and Turbine Service, Inc.

Hulse, Nelson & Wanek, John I. Hulse, IV, New Orleans, La., for Sentry Ins., Gonzales Mfg. and Indus. Machine Works.

Chaffee, McCall, Phillips, Toler & Sarpy, J. Francois Allain, New Orleans, La., Donald F. Mooney, New York City, for Auto Transp. S.A.

Phelps, Dunbar, Marks, Claverie & Sims, George Fowler, James B. Feinman, New Orleans, La., Richard A. Hagen, New York City, for Todd Shipyards Inc.

Allen F. Campbell, New Orleans, La., for Gonzales Mfg. & Indus.

Before RANDALL, JOHNSON and GARWOOD, Circuit Judges.

RANDALL, Circuit Judge:

This blockbuster maritime action,[1] initiated ten years ago, is before us for the second time. On the first appeal, we affirmed the district court's findings of liability but directed the district court on remand to modify its judgment to take into account, *inter alia*, (1) the awarding of prejudgment interest; (2) the validity of the red-letter clause in the contract between Auto Transportation, S.A., and Todd Shipyards Corporation; and (3) the full scope of the damages excludable under the work-product exclusion in the subcontractors' insurance policies. We also instructed the district court to make a final determination of damages as to all of the parties. On remand, the district court carefully sifted through the evidence and contentions of the parties, made additional findings of fact and conclusions of law, and entered judgment accordingly.

On appeal from this judgment, the appellants launch what can be regarded as a two-prong attack. First, they urge us to engage in a de novo review of a number of issues already resolved in the first panel opinion. Second, they challenge almost all aspects of the district court's opinion. We hold that the law of the case doctrine bars further consideration of the issues already resolved by this Court. With respect to the judgment of the district court, we affirm in all respects but one. Because attorney's fees in this case is a component of foreseeable damages recoverable for breach of implied warranties of workmanlike performance, we find that the district court erred in excluding Todd's liability for attorney's fees from coverage of the red-letter clause. Consequently, we remand the case solely for the reallocation of the fee award among the appropriate parties.

## I. BACKGROUND

### A. Facts

In *Todd Shipyards Corp. v. Turbine Service, Inc.*, 467 F.Supp. 1257, 1270–81 (E.D.La.1978) (*Todd I*), the district court set forth in detail the facts of this case.[2] We repeat them here summarily and only to the extent made necessary by our analysis.

This litigation concerns an attempt by Auto Transportation, S.A. (Auto), owners of the vessel KATRIN, to recover damages due to faulty repairs performed by several repairers. In February of 1975, Auto brought the vessel to the repair yard of Todd Shipyards Corporation (Todd) for boiler and bulkhead repairs and for inspection of its high pressure (HP) and low pressure (LP) turbines. The contract contained Todd's standard "red-letter" clause and conditions. The boiler and bulkhead repairs were accomplished satisfactorily and are not implicated in this action.

Todd engaged a subcontractor, Turbine Service, Inc., (Turbine Service) to open up the turbines for inspection. Although the HP turbine required relatively minor repairs, the LP turbine was found badly damaged. Todd and Turbine entered into a contract for the repair of the LP turbine. Under this agreement, Turbine was required, among other things, to remove and replace four rows of blades from the LP turbine; to fair, dress and reinstall the remaining blades; and, as found necessary, to straighten and renew the stationary blades in the upper and lower casing.

Turbine Service in turn subcontracted a substantial portion of the work to Gonzales Manufacturing and Industrial Machine Works, Inc. (Gonzales). When replacement blades for the LP turbine could not be found, Turbine Service decided to modify blades not otherwise compatible with the turbine by milling off their airfoils—that portion of the blades that protrudes into

---

1. *See infra* note 5 and accompanying text.

2. *Todd I* contains 181 discrete findings of fact by the district court. 467 F.Supp. at 1270–81.

the stream flow—and welding them onto the roots of the old blades for insertion into the turbine rotor. Because the fabricated blades were shorter than the original KATRIN blades, "spacer rings," annular steel rings, were manufactured and attached to the inside of the turbine casing to reduce the space between the casing and the modified blades. Turbine Service never had the blades tested and failed to disclose the modification of the blades to either Todd or Auto.[3]

After reinstallation, the KATRIN passed two dock trials. During the river trial, however, a Todd observer heard noises inside the turbine. The LP turbine was opened, and considerable damage was found inside. At trial, the district court determined that the damage was precipitated by a defective weld on one or two rotor blades. Auto shipped the LP turbine to Siemens A.G. in Germany, the original manufacturer, for rebuilding. Eight months later, the LP turbine was returned to the United States and installed. The KATRIN thereafter traded commercially for the next few months. In July of 1976, for reasons having no bearing on this appeal, the vessel sustained extensive damage off the Irish coast at Cork and was sold for scrap.[4]

### B. Prior Proceedings

This action was originally brought by Todd in June of 1975 against Turbine Service and Gonzales demanding the return of certain damaged turbine parts of the KATRIN, which were removed after the river trial casualty and taken to the shops of Turbine Service and Gonzales. By the time of trial, however, the nature of the litigation had changed considerably. Auto had intervened to recover for damages to its vessel, and the insurers of Turbine Service

and Gonzales—Travelers Insurance Company (Travelers) and Sentry Insurance Company (Sentry), respectively—were brought into the suit. The parties' claims, counterclaims, and cross claims included the following:

(1) Auto sought to recover from all other parties for the cost of repairing the KATRIN's LP turbine in Germany, loss of use of the vessel during the repair period, and related expenses.

(2) Todd sought to recover from Auto the balance of its repair invoices and indemnity from Turbine Service and Gonzales and their respective underwriters in the event Todd was found liable to Auto.

(3) Turbine Service and Travelers sought indemnity from Gonzales and Sentry for negligent workmanship by Gonzales and sought to recover from Todd and Auto unpaid repair invoices.

(4) Gonzales and Sentry sought to recover unpaid repair invoices from all other parties and sought indemnity from Turbine Service for any liability imposed on Gonzales or Sentry.

The trial lasted sixty-seven days over a six-month period and was the longest nonjury maritime trial in the history of the Eastern District of Louisiana.[5] After trial, the district court in a comprehensive opinion held that Todd, Turbine Service, and Gonzales were negligent and in breach of implied warranties of workmanlike performance. As a result, all were liable *in solido* to Auto for $967,633.20 in damages for repair and reinstallation costs, loss of use during the down time of the vessel, and certain necessary expenses. The district court also (1) found applicable the workproduct exclusion of Travelers' and Sentry's insurance policies, (2) granted Todd

---

3. On completion of its work, Gonzales obtained a release from liability from Turbine Service.

4. Auto originally sought to hold the repairers liable for damages suffered by the KATRIN in the Cork casualty. The district court, however, found that the casualty was not caused by any of the repairers, and this finding, upheld in our prior panel opinion, is no longer contested.

5. During trial, the court heard testimony from 28 witnesses, and the trial transcript is in excess of 10,000 pages. There were over 7000 pages of depositions and more than 600 exhibits offered. The record on appeal comes to 90 volumes.

full indemnity over against both Turbine Service and Gonzales, and (3) denied all indemnity as between Turbine Service and Gonzales. Finally, post-judgment interest was awarded, and Auto was held entitled to attorney's fees "[to] be tried in due course." *Todd I, supra,* at 1311.

On appeal, we upheld both the *in solido* liability of Todd, Turbine Service, and Gonzales and Todd's right to indemnification from Turbine Service and Gonzales. *Todd Shipyards Corp. v. Turbine Service, Inc.,* 674 F.2d 401, 424–25 (5th Cir.1982) (*Todd II*). In addition, we affirmed the district court's judgment denying such a right between Turbine Service and Gonzales. We, however, concluded that the district court had erred in several respects. First, we found that, inasmuch as the case was within the admiralty jurisdiction of the district court, prejudgment interest should have been awarded. Second, we held that, contrary to the conclusion of the district court, the red-letter clause in Todd's contract with Auto was effective in limiting Todd's liability under the circumstances of this case. Third, we determined that additional costs needed to be excluded under the work-product exclusion of the Travelers and Sentry policies. We remanded the case with directions that the district court recalculate the respective liabilities of the parties in light of the foregoing, fix the award of costs and attorney's fees owing to Auto, and make a final determination of damages with respect to all the parties. *Id.*[6]

On remand,[7] the district court set prejudgment interest, determined attorney's fees and costs, and modified its damage award, *Todd Shipyards Corp. v. Turbine Service, Inc.,* 592 F.Supp. 380 (E.D.La. 1984) (*Todd III*), all of which is described

more fully below. From the final judgment of the district court, Todd, Travelers, and Sentry appeal.[8]

## II. CONTENTIONS ON APPEAL

As mentioned above, the contentions of the parties fall within two general categories. First, Travelers and Sentry at great length urge us to reopen a number of issues already determined by the prior panel decision. It is argued that the law of the case doctrine does not preclude de novo review of these issues because (1) the prior panel lacked subject matter jurisdiction over the district court's 1982 judgment and (2) the holdings of this Court with respect to these issues are clearly erroneous and would work a manifest injustice. Second, all the appellants raise various objections to the final judgment of the district court not previously considered by this Court. Travelers and Sentry challenge (1) the award of prejudgment interest and (2) the determination by the district court of the amount of damages excluded from coverage under the work-product exclusion of the underwriters' insurance policies. Todd asserts that the district court erred in (1) refusing to extend coverage of the red-letter clause to its liability for Auto's attorney's fees; (2) holding it liable *in solido* with Turbine Service and Gonzales for Auto's damages, irrespective of the operation of the red-letter clause; and (3) offsetting the amount due on its repair invoice against the entire *in solido* liability of the repairers instead of awarding it recovery directly from Auto.

We consider each of these contentions in turn.

---

**6.** In the course of the opinion, we also instructed the district court to modify its judgment to reduce damages for the loss of use of the KATRIN from $645,000 to $498,000. *Todd II, supra,* at 415.

**7.** Following our original opinion in this case, petitions for rehearing and rehearing *en banc* were filed and denied. 680 F.2d 1389 (5th Cir. 1982). Travelers and Sentry subsequently filed petitions for writs of certiorari, which were also denied. *Sentry Ins. v. Todd Shipyards Corp.,*

459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982); *Travelers Ins. Co. v. Todd Shipyards Corp.,* 459 U.S. 1036, 103 S.Ct. 448, 74 L.Ed.2d 603 (1982).

**8.** Turbine Service is insolvent and did not appeal the original district court decision. Gonzales is satisfied with the judgment of the district court on remand and joins this appeal as an appellee.

## III. DE NOVO REVIEW

■■■ The law of the case doctrine, as formulated in this circuit, generally precludes reexamination of issues of law or fact decided on appeal, either by the district court on remand or by the appellate court itself on a subsequent appeal. *Dickinson v. Auto Center Manufacturing Co.*, 733 F.2d 1092, 1096 (5th Cir.1983); *Conway v. Chemical Leaman Tank Lines, Inc.*, 644 F.2d 1059, 1061 (5th Cir.1981). This doctrine "is based on the salutary and sound public policy that litigation should come to an end." *White v. Murtha*, 377 F.2d 428, 431 (5th Cir.1967). Indeed, if every question once considered and decided remained open for reexamination in subsequent proceedings in that same case, an appellate court could not efficiently or satisfactorily perform its duties. *Chapman v. NASA*, 736 F.2d 238, 241 (5th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984); *White v. Murtha, supra*, at 431. Moreover, the law of the case doctrine "discourages 'panel shopping' at the circuit level for in today's climate it is most likely that a different panel will hear subsequent appeals." [9] *Lehrman v. Gulf Oil Corp.*, 500 F.2d 659, 662 (5th Cir.1974), *cert. denied*, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975). Nonetheless, it is well established that the doctrine is not an inexorable command but a rule of practice, usually followed but limited in scope. *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983); *United States v. Horton*, 622 F.2d 144, 148 (5th Cir.1980).

In the case at bar, Travelers and Sentry argue that the law of the case doctrine is inapplicable because the prior panel lacked appellate jurisdiction over the first appeal.[10] Citing *Holmes v. J. Ray McDermott & Co.*, 682 F.2d 1143, 1146 (5th Cir. 1982), *cert. denied*, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983), Travelers and Sentry point out that, when attorney's fees are an integral part of the merits and the scope of relief, an order of the district court is not a final judgment within the meaning of 28 U.S.C. § 1291 [11] unless that

9. In this regard, we have stated:

In more tranquil days and times, an appeal from a second trial would be heard by the same Court as the first appeal. Now, that is highly unlikely, and where it occurs, it is—at least in this Court—due entirely to the laws of chance. That puts a premium on multiple appeals. That is so because, without implying any improper purpose to litigants or their counsel, or acknowledging anything more than, as human beings, Judges will unavoidably have differences in emphasis, approach, or views on close questions in given areas, if the practice is followed for each succeeding panel to arrive at its own decisions, the losing party on the first appeal will naturally strive to bring it back a second, or a third, or a fourth time until all are exhausted. This possibility involves something other than simply more grist for our mill and as to which we should be indifferent. One of the vices is that whether a litigant gets a second, or a third time at bat likewise depends so much on chance, or at least on factors making it most unfair that in one situation a second trial and appeal is available while in another one it is lacking.

\* \* \* \* \* \*

We think that in a multi-Judge Court it is most essential that it acquire an institutional stability by which the immediate litigants of any given case, and equally important, the bar who must advise clients or litigants in situations yet to come, will know that in the absence of most compelling circumstances, the decision on identical questions, once made, will not be re-examined and redecided merely because of a change in the composition of the Court or of the new panel hearing the case. *Lincoln National Life Ins. Co. v. Roosth*, 306 F.2d 110, 114 (5th Cir.1962) (*en banc*), *cert. denied*, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963).

10. We note in passing that the law of the case doctrine does not bar consideration of this claim since the *Todd II* panel did not address the issue of subject matter jurisdiction and therefore cannot be regarded as having ruled on it. *See Brown Shoe Co. v. United States*, 370 U.S. 294, 307, 82 S.Ct. 1502, 1514, 8 L.Ed.2d 510 (1962); *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 38 & n. 9, 73 S.Ct. 67, 69 & n. 9, 97 L.Ed. 54 (1952); *Clifton v. Heckler*, 755 F.2d 1138, 1145 n. 14 (5th Cir.1985). The law of the case doctrine precludes reconsideration only of those issues decided explicitly or by necessary implication in the prior opinion. *Conway, supra*, at 1061–62; *Lehrman, supra*, at 664–65.

11. 28 U.S.C. § 1291 provides in part:

The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of

order includes a determination of the fees. *See also Alcorn County v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1164 (5th Cir.1984) (applying *Holmes* rule); *Oxford Production Credit Ass'n v. Duckworth*, 689 F.2d 587, 588 (5th Cir.1982) (same). Travelers and Sentry contend that, because (1) the district court in its first judgment held that Auto was entitled to attorney's fees but failed to calculate the fee amount and (2) the fees were awarded as a substantial component of Auto's foreseeable damages, the *Todd II* appeal was not perfected under the final judgment rule of § 1291.

 We agree with Travelers and Sentry that this Court in *Todd II* lacked appellate jurisdiction of the district court's judgment under § 1291. It is well established in this circuit that, in an action for breach of implied warranties of workmanlike performance, attorney's fees are recoverable as foreseeable damages. *Thibodeaux v. Texas Eastern Transmission Corp.*, 548 F.2d 581, 587 (5th Cir.1977); *see also McCawley v. Ozeanosun Compania, Maritime, S.A.*, 505 F.2d 26, 32 (5th Cir.1974); *Strachan Shipping Co. v. Koninklyke Nederlandsche Stoomboot Maalschappy, N.V.*, 324 F.2d 746, 747 (5th Cir.1963), *cert. denied*, 376 U.S. 954, 84 S.Ct. 969, 11 L.Ed.2d 972 (1964). Such an award of attorney's fees cannot be regarded as collateral to the action but forms an integral part of the scope of relief. Therefore, under *Holmes* and its progeny, cited above, it follows that the district court's failure in *Todd I* to set the amount of fees before the

the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

The Supreme Court has consistently held that generally an order is final under this provision when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978); *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).

12. 28 U.S.C. § 1292(a) in pertinent part provides:

entry of judgment precluded the exercise of § 1291 jurisdiction.

 However, because this case was brought under the admiralty jurisdiction of the district court, we hold that the panel had jurisdiction under 28 U.S.C. § 1292(a)(3).[12] Under this provision, the appellate courts have jurisdiction of appeals from interlocutory decrees that determine the rights and liabilities of the parties to admiralty cases. *See generally Offshore Logistics Services, Inc. v. Mutual Marine Office, Inc.*, 639 F.2d 1168, 1170 (5th Cir.1981); *O'Donnell v. Latham*, 525 F.2d 650, 652 (5th Cir.1976). Although § 1292(a)(3) is to be construed narrowly, we have consistently held that the provision should be applied to achieve its original purpose of allowing the final determination of liability among the parties before the computation of damages. *See Hollywood Marine, Inc. v. M/V Artie James*, 755 F.2d 414, 416 (5th Cir.1985); *In re Patton-Tully Transportation Co.*, 715 F.2d 219, 222 n. 4 (5th Cir.1983); *see generally* 9 J. Moore, Federal Practice ¶ 110.-19[3]; 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice & Procedure § 3927. Here, the district court's original judgment not only determined all rights and liabilities among the parties but also calculated all recoverable damages with the sole exception of the amount of attorney's fees and costs owing to Auto. The appeal from that judgment, therefore, came well within the scope of the § 1292(a)(3) exception to the final judgment rule.[13]

(a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

&ast; &ast; &ast; &ast; &ast; &ast;

(3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

13. Travelers and Sentry contend that an application of § 1292(a)(3) to the facts of this case would be inconsistent with *Holmes v. J. Ray McDermott & Co., supra*, in which we dismissed the appeal for lack of jurisdiction on the ground that the order establishing liability did not set forth, as part of the damages recoverable, the

■ Travelers and Sentry alternatively argue that, even if the law of the case doctrine is generally applicable, we should exercise our limited discretion and reconsider certain holdings of the *Todd II* panel. These holdings include (1) the granting of attorney's fees to Auto, (2) the award of indemnity to Todd, (3) the denial of indemnity as between Turbine Service and Gonzales, (4) the finding of Gonzales' liability, and (5) the award of $3,000 per day net down time damages to the KATRIN. Each of these claims was fully briefed and squarely decided in the original appeal of this case and additionally was the subject of a petition for rehearing and a petition for rehearing *en banc*.

We have often stated that the law of the case doctrine is subject to three exceptions,[14] only one of which is relevant here. Before we can resurrect and give favorable consideration to the contentions previously rejected in *Todd II*, Travelers and Sentry must demonstrate that the challenged holdings of the prior panel are "clearly erroneous and would work an injustice." *Goodpasture, Inc. v. M/V Pollux,* 688 F.2d 1003, 1005–06 (5th Cir.1982), *cert. denied,* 460 U.S. 1084, 103 S.Ct. 1775, 76 L.Ed.2d 347 (1983); *White v. Murtha, supra,* at 432. In the absence of such an exceptional circumstance, the law of the case, whether right or wrong, applies. *See Doe v. Marshall,* 694 F.2d 1038, 1041 (5th Cir.), *cert. denied,* 462 U.S. 1119, 103 S.Ct. 3087, 77 L.Ed.2d 1349 (1983); *Key v. Wise,* 629 F.2d 1049, 1055 n. 4 (5th Cir.1980), *cert. denied,* 454 U.S. 1103, 102 S.Ct. 682, 70 L.Ed.2d 647 (1981); *Schwartz v. NMS Industries, Inc.,* 575 F.2d 553, 554 (5th Cir.1978). We have fully considered the contentions of Travelers and Sentry. We cannot say that any of the prior panel's holdings is unprincipled or without basis in law or fact. The *Todd II* decision neither is clearly erroneous nor works a manifest injustice. We therefore hold that the law of the case doctrine is fully applicable and bars reconsideration of the issues already determined by this Court.[15]

## IV. NEW CLAIMS

### A. Prejudgment Interest

Although fully briefed on the issue, the district court in *Todd I* was silent on the matter of prejudgment interest.[16] On appeal from the original judgment, we reiterated the oft-applied principle that in admiralty cases an award of prejudgment interest is the rule rather than the exception. Because no peculiar circumstances were disclosed on the face of the record that would allow the district court to refuse to make such an award, we directed the district court on remand to calculate and award prejudgment interest. *Todd II, supra,* at 416.

On remand, the district court used the rate of interest provided in La.Civ.Code Ann. art. 2924(B) as the touchstone in its

---

amount of the attorney's fee award. Contrary to the contentions of Travelers and Sentry, however, *Holmes* was not an admiralty case. The plaintiff in Holmes asserted both Jones Act, 46 U.S.C. § 688, and maritime claims and elected to try the entire case before a jury, thereby foregoing the admiralty jurisdiction of the federal courts. *See* Fed.R.Civ.P. 9(h); *T.N.T. Marine Serv., Inc. v. Weaver Shipyards,* 702 F.2d 585, 587 (5th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983); *Moser v. Texas Trailer Corp.,* 623 F.2d 1006, 1010 (5th Cir.1980). The admiralty exception to the final judgment rule hence was not available. *Borne v. A & P Boat Rentals No. 4, Inc.,* 755 F.2d 1131, 1133 (5th Cir.1985).

**14.** The law of the case doctrine does not apply when (1) a subsequent trial produces substan-

tially different evidence, (2) controlling authority has made a contrary decision of the law applicable to the issues, or (3) the prior decision was clearly erroneous and would work an injustice. *Morrow v. Dillard,* 580 F.2d 1284, 1292 (5th Cir.1978); *White v. Murtha, supra,* at 432.

**15.** *Cf. Tatro v. Texas,* 703 F.2d 823, 826 (5th Cir.1983) (although suggesting that it disagreed with prior decision, panel found law of the case doctrine applicable because the previous decision was a "principled interpretation of [an] undeniably delphic statute"), *rev'd in part on other grounds sub nom. Irving Ind. School Dist. v. Tatro,* — U.S. —, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984).

**16.** Post-judgment interest, however, was awarded.

calculations.[17] Auto's suggestion that the much higher prime rate be used was explicitly rejected on the ground that no evidence had been introduced that Auto had borrowed any money and incurred higher costs. However, because of the "uncommon high rate of return available to investors over the principal part of [this litigation]," the court decided that "full and fair compensation is more nearly achieved by a calculation of interest on a compound basis." *Todd III, supra,* at 385. The court ordered prejudgment interest to be compounded on a daily basis and set forth the dates from which the interest would run.

■ Travelers and Sentry object to the district court's award of prejudgment interest in two respects. First, they argue that the prior panel should not have granted prejudgment interest at all under the "peculiar circumstances" of this case or at least should have allowed the district court to decide the issue in the first instance. We, though, are law-of-the-case bound in this matter and thus cannot reconsider this contention. The *Todd II* holding requiring prejudgment interest to be awarded is not inconsistent with precedent nor clearly erroneous. *See Noritake Co. v. M/V Hellenic Champion,* 627 F.2d 724, 730 (5th Cir. 1980); *Alcoa Steamship Co. v. Charles Ferran & Co.,* 443 F.2d 250, 256 (5th Cir.), *cert. denied,* 404 U.S. 854, 92 S.Ct. 98, 30 L.Ed.2d 94 (1971).

■ Second, Travelers and Sentry assert that the district court abused its discretion in ordering the prejudgment interest to be compounded daily. This claim is meritless. In admiralty cases, prejudgment interest is not awarded as a penalty but as compensation for use of funds by the defendant to which the plaintiff is entitled. *King Fisher Marine Service, Inc. v. NP Sunbonnet,* 724 F.2d 1181, 1187 (5th Cir.1984); *In re Vulcan,* 553 F.2d 489, 490 (5th Cir.), *cert. denied,* 434 U.S. 855, 98 S.Ct. 175, 54 L.Ed.2d 127 (1977). Admiralty courts in setting these rates have broad discretion and may look to state law or other reasonable guideposts indicating a fair level of compensation. *Platoro Ltd. v. Unidentified Remains of a Vessel,* 695 F.2d 893, 907 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983); *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.,* 651 F.2d 1096, 1101 (5th Cir.1981). The court below believed that the judicial interest rates provided in article 2924 of the Louisiana Civil Code would undercompensate Auto, but that the prime rates available during the applicable periods were too high.[18] Consequently, the court adopted the statutory rates but ordered them to be compounded daily to approximate roughly the rate of return Auto could have received. We perceive no abuse of discretion either in this methodology or in the resulting award.[19]

### B. The Work-Product Exclusion

Turbine Service and Gonzales were covered by identical comprehensive general lia-

---

**17.** Article 2924(B) of the Louisiana Civil Code provides:

The rate of judicial interest resulting from a lawsuit pending or filed during the indicated periods shall be as follows:

(a) Prior to September 12, 1980, the rate shall be seven percent per annum.

(b) On and after September 12, 1980, until September 11, 1981, the rate shall be ten percent per annum.

(c) On and after September 11, 1981, the rate shall be twelve percent per annum.

La.Civ.Code Ann. art. 2924(B).

**18.** When the Louisiana rate was 7%, the prime rate reached 19.75%; when the Louisiana rate was 10%, the prime rate climbed to 21.5%; and when the Louisiana rate was 12%, the prime rate was as high as 20%. *See* Auto's Reply Submission Appendix E (Prime Rates of First National Bank of Commerce, New Orleans, Louisiana).

**19.** In its brief, Travelers also asserts that prejudgment interest on the judgment should not run during the time between the Supreme Court's denial of Travelers' petition for a writ of certiorari and the issuance of the district court's judgment on remand. In support, Travelers states that it did not contribute to this delay and that its appeal in *Todd II* was at least partially successful. Mindful that the purpose of prejudgment interest is simply to compensate and not to impose a penalty, we do not think the district court abused its discretion in requiring interest to accrue during this period.

bility insurance policies issued by Travelers and Sentry, respectively. These policies included a "work-product" or "injury-to-work" exclusion which eliminated coverage for the costs of repairing or replacing the insured's work product. In *Todd I*, the district court construed the exclusion to relieve Travelers from paying for replacing blades in rows 11–14 and sixty-three other blades in the LP turbine at a cost of $51,-323. *Todd I, supra,* at 1312. Travelers and Sentry remained liable for the remainder of the LP turbine repair damages.

On appeal from that decision, Travelers and Sentry argued that their insureds' work product was the entire LP turbine and that consequently the entire cost of repairing the turbine should have been excluded. We upheld the applicability of the work-product exclusion in general, but found this contention to be "plainly contrary to the facts." *Todd II, supra,* at 421. We stated that, on the record of this case, the work product of the insureds was only the specific components they attempted to repair. *Id.*[20] Travelers and Sentry, however, were not denied all relief. In *Todd I*, the district court had only excluded the actual replacement costs of the insureds' work product. We determined on appeal that the work-product exclusion also applied to all out-of-pocket expenses associated with repairing and replacing the insureds' work product. We concluded: "At the risk of oversimplification, it appears that all economic losses suffered by the KATRIN's Owners may be attributable either to the 'down time' of the KATRIN or to the repair or replacement of the work product of Todd, Turbine Service and Gon-

zales." *Id.* at 423. We remanded for the district court to determine anew Travelers' and Sentry's liability.

On remand, the district court once again identified that the insureds' work product consisted of the blades in rows 11–14 and sixty-three other blades and calculated that the cost of replacing these blades comprised 23% of the total repair costs of the LP turbine. The court then reported that it had examined every invoice in minute detail and, whenever a cost of inspecting, crating, shipping, or reinstalling the LP turbine was included in an item of damage, excluded 23% of the charges. Finally, the court deducted (1) the cost of replacing the insureds' work product and (2) the amount of out-of-pocket expenses attributable to such repair from the underwriters' total liability. Travelers and Sentry remained liable for such damages as loss of use of the vessel, general expenses from the master's account, and pilotage, wharfage, tug, repatriation, and recrewing expenses. *Todd III, supra,* at 388.

 On appeal from that decision, Travelers and Sentry assert that, in refusing to exclude the entire costs of inspecting, crating, shipping, and reinstalling the LP turbine, the district court failed to carry out this Court's specific instructions. They point out that in *Todd II* we stated that losses suffered by Auto could be attributable *"either* to the down time of the KATRIN *or* to the repair or replacement of the work product." *Todd II, supra,* at 423 (emphasis supplied). According to the underwriters, this statement directed the district court to exclude from coverage the cost of repairing the entire LP turbine.[21]

**20.** In so holding, we found *Travelers Ins. Co. v. Volentine,* 578 S.W.2d 501 (Tex.Civ.App.1979), instructive. In that case, the court held that, because the work of the insured was solely to repair an engine valve, the "injury-to-work" exclusion did not exclude from coverage the subsequent destruction of the entire engine. We distinguished the Louisiana cases cited by Travelers and Sentry on the ground that the mechanics in those cases overhauled the entire engine. Louisiana law, which we held governed the resolution of this issue, is generally not inconsistent with this analysis. *See, e.g., Hendrix Elec.*

*Co. v. Casualty Reciprocal Exch.,* 297 So.2d 470 (La.App.1974).

**21.** Travelers and Sentry also rely on the following excerpt:

We conclude, then, that Travelers and Sentry are liable for those damages attributable to the KATRIN's "down time", such as damages for loss of use of the vessel, general expenses from the master's accounts, and pilotage, wharfage, tug, repatriation and recrewing expenses. However, Travelers and Sentry are not liable for any costs incurred in

We find this contention ill-conceived. As the district court observed in rejecting the same argument in *Todd III*, the portion of the opinion relied upon by Travelers and Sentry appears at the end of a lengthy discussion concerning the scope of the policies' coverage. In the course of this discussion, we expressly upheld the district court's conclusion that the work product of the insureds was not the LP turbine in its entirety but only portions thereof. *See Todd II, supra*, at 421. Moreover, we observed that, under Louisiana law, "the [work product] exclusion does not exclude damages to property other than the insured's work product." *Id.* at 423. This being the case, our opinion in *Todd II* clearly required the district court to "segregate costs and dissect invoices" in order to determine that portion of the entire costs of inspecting, crating, shipping, and reinstalling the LP turbine that was attributable to repairing specifically the insureds' work product. While the summary of that discussion, upon which Travelers and Sentry rely, might have been worded more carefully, our analysis, taken as a whole, provided

> repairing and replacing the work product of their insureds, including the cost of inspecting, crating, shipping, and reinstalling the LP turbine. We remand to the district court for determination of the exact amount of Travelers' and Sentrys' [sic] liability.
> *Todd II, supra*, at 423.

**22.** Sentry additionally appears to argue, quite apart from any reliance upon our statements in *Todd II*, that Gonzales worked on the entire LP turbine and therefore all costs incurred in repairing or replacing the LP turbine should be excluded from the policy's coverage. To the extent that Sentry makes this argument, we are precluded from considering it by the law of the case doctrine. As noted above, the panel in *Todd II* found that Sentry's contention was "plainly contrary to the facts." *Todd II, supra*, at 421.

Neither Travelers nor Sentry alleges that, in addition to the blades, other particular components of the turbine were created by the insureds and required repair or replacement at such costs specifically demonstrated at trial. *Cf. Southwest Louisiana Grain, Inc. v. Howard A. Duncan, Inc.*, 438 So.2d 215, 223 (La.App.) (holding work-product exclusion did not exclude from coverage work performed not "form[ing] part of the permanent, tangible, visi-

adequate guidelines to the district court for use in determining the exact amount of Travelers' and Sentry's liability. The district court correctly applied these guidelines on remand, and its determination and allocation of damages is not clearly erroneous. *See King Fisher Marine Service, Inc., supra*, at 1187; *Florida East Coast Railway Co. v. Revilo Corp.*, 637 F.2d 1060, 1067 (5th Cir.1981).[22]

### C. The Red-Letter Clause

Todd presents two arguments with respect to the district court's enforcement of the red-letter clause, which limited Todd's liability for negligence or breach of contract to $300,000.[23] First, Todd argues that the court erred in failing to apply the red-letter clause to its liability for Auto's attorney's fees. Attorney's fees were awarded in this case as a component of the general damages recoverable. As such, Todd contends, the fees stand in equal footing with the other elements of the damage award and should have been considered part of the liability subject to the $300,000 limitation.[24] We agree.

ble structure"), *writ denied*, 441 So.2d 1224 (La. 1983).

**23.** The red-letter clause is set out in full in *Todd I, supra*, at 1270 n. 4. The pertinent parts read as follows:

> We contract for vessel repair and drydocking and other services only upon the basis of insured limited liabilities as set forth below. In no event shall our liability for any claim arising under this contract exceed in the aggregate the sum of $300,000.00.
>
> \* \* \* \* \* \*
>
> ... Our liability, if any, is strictly limited to the cost of repair, correction or replacement thereof and in no event shall we be liable for any consequential damage whatsoever including but without limitation, delay, detention, demurrage, towage, and pilotage.

Because in *Todd II* we reversed the district court's earlier determination that this clause was inapplicable under the facts of this case, the clause was applied for the first time in *Todd III*.

**24.** Todd also argues that the attorney's fees can be regarded as consequential damages, which under the red-letter clause Todd had no obligation to pay. Because the repairers' liability is *in solido* and in this case the repair and replacement costs alone exceed the $300,000 ceiling, we need not decide whether the attorney's fees

As we discussed in Part III of this opinion, it is the law of this circuit that "[f]oreseeable damages recoverable for breach of the [warranty of workmanlike performance] include reasonable attorney's fees and litigation expenses." *Thibodeaux v. Texas Eastern Transmission Corp., supra,* at 587. Todd's liability for Auto's attorney's fees, therefore, is fundamentally different from, for example, liability for interest on a judgment, which we held was not covered by the red-letter clause in *Alcoa Steamship Co. v. Charles Ferran & Co., supra,* at 254, relied on by the district court. Whereas an award of judicial interest is collateral to and independent of the action itself, attorney's fees awarded as a result of breach of an implied warranty of workmanlike performance are an integral part of the merits of the case and the scope of relief. *See supra* Part III; *see also Holmes, supra,* at 1146. Liability for such an award of attorney's fees, as a consequence, must be regarded as part and parcel of the substantive liability capped by the red-letter clause. Thus, although we are reluctant to delay any further the end of this litigation, protracted as it is, we must reverse the portion of the judgment holding Todd liable for Auto's fees apart from the $300,000 limitation of the red-letter clause. We direct the district court on remand to modify its judgment so that Todd's liability for the fee award is included within the aggregate liability limited by contract.

Second, Todd argues that, because the red-letter clause confines its liability to only certain costs, the district court erred in holding Todd liable *in solido* with Turbine Service and Gonzales. We find this argument meritless. While the red-letter clause places certain restrictions on the damages recoverable from Todd, it does not alter the fundamental character of Todd's liability. In *Todd II,* we affirmed the district court's finding that Todd's negligence and breach of warranty were a prox-

imate cause of Auto's damages, for which Todd was primarily liable. *Todd II, supra,* at 410. That holding is now the law of the case. We conclude that Todd's resulting shared obligation with Turbine Service and Gonzales is *in solido* to the extent of the limits of the red-letter clause or the amount Auto can compel any of the repairers to pay. *See generally Narcise v. Illinois Central Gulf R.R.,* 427 So.2d 1192, 1195 & n. 4 (La.1983) ("While one item of damages may be recoverable against one debtor and not the other, the parties are liable in solido as to every item for which plaintiff can compel payment from either.").

### D. "Savings Made Possible"

Todd's final argument is that the district court erred in offsetting the balance due to Todd on the repair contract from Auto's total recovery. Todd argues that, because all three repairers are liable to Auto *in solido,* offsetting resulted in a windfall to Turbine Service and Gonzales at Todd's expense. We find no error.

In its original decision, the district court determined that the measure of damages for breach of contract should govern in this case. *Todd I, supra,* at 1304. We agreed on appeal. *Todd II, supra,* at 412. Under this measure, Auto was entitled to be put in the same position it would have occupied had the repair contract been performed. Damages were therefore computed by adding (1) the cost of repairs to have the LP turbine placed in the condition contracted for, (2) necessary expenses during down time of the vessel, (3) loss of profits during down time, and (4) costs and attorney's fees.[25] *Todd I, supra,* at 1304. An award of this sum, however, would have placed Auto in a better position than it would have been in if the contract had not been breached, because the breach discharged Auto's duty to pay the balance due under the

---

were direct or consequential damages within the meaning of the red-letter clause.

**25.** As noted several times above, attorney's fees and costs were recoverable because the repairers breached *implied* warranties of workmanlike performance.

757

contract.[26] Thus, the amount of the contract price that had not yet been paid was deducted from the damages as "savings made possible." Specifically, $1,142,446—the total of LP turbine repair damages, loss-of-use damages, and out-of-pocket damages—were reduced by $174,813—the balance due on the repair contract—to result in net recoverable damages of $967,633. *Todd I, supra,* at 1311. On remand, the district court, pursuant to our directions, lowered the loss-of-use damages from $645,000 to $498,000, thereby further reducing net damages to $820,663.

In light of the above, that Todd's argument is based on a false premise is readily apparent. Contrary to its contentions, Todd is not entitled to recover the balance due under the contract. As the district court made clear in *Todd I,* this obligation was discharged by Todd's breach. Rather, the district court considered the balance due on Todd's repair contract in computing Auto's damages solely in order to ensure that Auto received no more than its expectation interest.[27] Because the repairers were obligated *in solido* to pay this expectancy, the district court correctly subtracted the balance due under the contract from the amount of their total liability.

## V. CONCLUSION

We hold that the red-letter clause applies to Todd's liability for the award of attorney's fees. Therefore, we remand with directions that the district court modify its judgment accordingly. In all other respects, the judgment is affirmed.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

26. With respect to Auto's and Todd's duty to pay the balance due on their respective contracts, the district court stated the following:

The material failure of performance on the part of each repairer had the effect of a non-occurrence of a condition precedent to the duty of each repairer's employer to pay the agreed price under the terms of their respective contract. The failures were "material" in

that the employer in each case was deprived of the benefit which he reasonably expected. This discharges the respective employer's duty to pay the contract price they had agreed to. *Todd I, supra,* at 1297.

27. *See generally* Restatement (Second) of Contracts § 347 (1981).