**Zack PFEIFFER, Plaintiff,**

v.

**EAGLE MANUFACTURING COMPANY and Dresser Industries, Inc., Defendants.**

**Civ. A. No. 89–2359–O.**

United States District Court, D. Kansas.

Aug. 2, 1991.

Gerald L. Green, Gilliand & Hayes, P.A., Hutchinson, Kan., Brian J. Niceswanger,

McDowell, Rice & Smith, Chartered, Kansas City, Mo., for Zack and Joann Pfeiffer.

Bruce Keplinger, Payne & Jones, Chartered, Overland Park, Kan., for Eagle Mfg. Co.

Barry E. Warren, Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for Resser Industries Inc.

Barbara J. Miller, Olathe Area SRS Office, Olathe, Kan., for State of Kan. Dept. of Social Rehabilitation Services, movant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the motion of defendant Eagle Manufacturing Company (hereinafter "Eagle Manufacturing") for reconsideration of the court's memorandum and order entered on July 1, 1991. Defendant again argues that its product, a "safety can," was not defective as a matter of law because it complied with administrative regulatory safety standards in designing and manufacturing the can. In addition, Eagle Manufacturing claims it had no duty to warn Pfeiffer because plaintiff painted over warnings on his cans. For the reasons stated below, the court will deny Eagle Manufacturing's motion for reconsideration.

In the early evening or late afternoon of July 20, 1987, Pfeiffer was severely burned in an explosion and fire at a work site in Wyandotte County, Kansas. Immediately prior to the explosion, plaintiff had picked up a five-gallon safety gasoline can to fuel his portable Dresser air compressor. The "safety can" was designed and manufactured by defendant Eagle Manufacturing.[1] After lifting the can into position to pour gasoline into the compressor's fill tube, Pfeiffer pulled back on the can's spring-hinged handle to open its spout and release the gasoline. Plaintiff alleges that the internal pressure within the container caused gasoline to spray instantly from the can onto heated compressor components and explode, igniting Pfeiffer's flesh and clothing. The explosion seriously burned plaintiff and destroyed his compressor. Pfeiffer contends that the "safety can" produced by Eagle Manufacturing was defective and unreasonably dangerous at the time in which it left defendant's control.

■ The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion. *See Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir.1988) (district court's decision on motion for reconsideration is reviewed under abuse of discretion standard). It is well established that a motion for reconsideration is the opportunity for the court to correct manifest errors of law or fact and to review newly discovered evidence or when there has been a change in the law. *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir.1985), *cert. denied*, 476 U.S. 1171, 106 S.Ct. 2895, 90 L.Ed.2d 982 (1986). Appropriate circumstances for a motion to reconsider are where the court has obviously misapprehended a party's position or the facts of the law, or the court has mistakenly decided issues outside of those the parties presented for determination. *Anderson v. United Auto Workers*, 738 F.Supp. 441, 442 (D.Kan.1990); *Refrigeration Sales Co. v. Mitchell–Jackson, Inc.*, 605 F.Supp. 6, 7 (N.D.Ill.1983). A party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider. *Renfro v. City of Emporia, Kan.*, 732 F.Supp. 1116, 1117 (D.Kan.1990) (quoting *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.*, No. 89–1412–C, slip op. at 2, 1989 WL 159369 (D.Kan., *unpublished*, Dec. 15, 1989)).[2]

---

**1.** Eagle Manufacturing Company is a corporation organized and existing under the laws of the State of West Virginia, engaged in the business of designing and manufacturing fuel containers for distribution in the State of Kansas, among other states. Defendant has manufactured and distributed at least three million Eagle UI–50–S, Type I safety cans over the course of thirty to thirty-five years.

**2.** The court further notes that under the "law of the case doctrine," once issues are decided by the court, those issues should not be relitigated or reconsidered unless they are clearly erroneous or unless some manifest injustice has been imposed. *Renfro v. City of Emporia, Kan., supra*, 732 F.Supp. at 1117. This doctrine is based on public policy favoring an end to litigation and encouraging dispute resolution by prevent-

Eagle Manufacturing again argues that its gasoline can was in "complete compliance" with safety standards promulgated by Underwriters Laboratories (hereinafter "UL") and Factory Mutual (hereinafter "FM") and that the can was therefore "non-defective as a matter of law." In Kansas, a product "shall be deemed not defective by reason of design or performance" when the injury-causing aspect of the product was, at the time of manufacture, "in compliance with ... *administrative regulatory safety standards relating to design or performance.*" K.S.A. 60–3304(a) (emphasis added).

Express testimony from qualified experts and industry representatives demonstrates that the Eagle Type I can does not comply with FM or UL standards. Eagle Manufacturing insists that the tenuous approval of a conditional rating that its safety can received in *Consumer Report* articles demonstrates that the can is acceptable. The articles, however, also identify areas of deficiency directly related to and in support of plaintiff's theory of the cause of the explosion and fire which burned Pfeiffer. In yet another attempt to reargue a factual issue, defendant claims that the court's reliance on a letter written by E.N. Davis in October of 1982 pertained to its "consumer can" rather than its "safety can." While this contention is correct, Davis' letter is significant because it reveals that defendant was operating under improper data concerning the vapor pressure of gasoline in sealed containment. The vapor pressure of gasoline is the same regardless of the type of container that holds it. The important fact is Eagle Manufacturing was put on notice by the letter that the pressure curve utilized by the company for gasoline was not accurate.

Even if defendant's "safety can" was in compliance with UL and FM standards, however, we concluded in our original opinion that the Kansas Supreme Court would hold that UL and FM standards "have neither the force of law nor are they entitled to the presumption of validity which would be accorded administrative regulations." *Pfeiffer v. Eagle Mfg. Co.,* 771 F.Supp. 1133, 1136 (D.Kan.1991). Voluntary standards issued by private entities such as FM and UL are not "the byproduct of open hearings, debate, and intense scrutiny by the legislature and government agency." *Id.* at 1137. Further, private laboratories do not receive input from all interested parties. *Id.* In addition, voluntary standards are, in many cases, drafted by the very corporations which design and manufacture the product that is governed by the standard. *Id.* at 1137.

If the court were to assume *arguendo* that defendant's "safety can" was in compliance with regulatory standards, thereby according the can a presumption of nondefectiveness, that presumption would nonetheless be overcome by the showing made by plaintiff in opposition to summary judgment. Allen established that a reasonably prudent product seller could and would have taken additional precautions. More specifically, plaintiff successfully argued that Eagle Manufacturing had information about a spray deflector cap, a device that protects consumers from the pressurized release of gasoline. In addressing Allen's argument, the court stated:

> In the early 1980's, another gasoline can manufacturer, Safe–T–Way, discovered, after conducting its own tests and evaluations, the "flame thrower" hazard, a pressurized release of gasoline mist and vapors from the spout of a heated safety can. The threat of such a pressurized release was inherent in the design of conventional gasoline cans at that time. Safe–T–Way therefore developed a "spray deflector" to correct the "flame thrower" effect. Eagle Manufacturing knew, or at least should have known, of the danger of pressurized releases from heated gasoline cans. Defendant's files contained Safe–T–Way informational literature concerning the spray deflector cap as early as 1982.

*Pfeiffer v. Eagle Mfg. Co.,* at 1139 (D.Kan. 1991). The defendant manufacturer now

---

ing continued reargument of decided issues. *See Todd Shipyards Corp. v. Auto Transp., S.A.,* 763 F.2d 745, 750 (5th Cir.1985); *Major v. Benton,* 647 F.2d 110, 112 (10th Cir.1981).

argues that its testing reveals that a spray deflector is not necessary. Eagle Manufacturing's test shows, however, only that no heptane—a volatile chemical used in fuels as a solvent—was expelled beyond a radius of ten feet when its "safety can" was exposed to fire. Pfeiffer was well within ten feet of defendant's product when he suffered burns. The test results disclose that the fire caused "liquid [to flow] from the spout." If anything, this test points out the need for a spray deflector or second vent.

The final ground asserted by Eagle Manufacturing involves the company's duty to warn consumers of dangers associated with its "safety can." The court did not find merit in defendant's argument that the danger of gasoline spraying out of its can under pressure was so open and obvious that plaintiff should have realized the hazard. In addition, we rejected Eagle Manufacturing's contention that the company was spared from its duty to warn because Pfeiffer had "extensive experience" in using such cans. Defendant now claims that Pfeiffer had painted over whatever warnings were on its can. The top of defendant's cans were embossed with initials "FM." Plaintiff points out, however, that he only put dark spots of paint on the top of cans that contained diesel fuel. The can in question held gasoline. Further, warnings relating to use of the can were on the side of the can and not on the top of it. We conclude that the grounds advanced by Eagle Manfacturing for reconsideration are without merit.

IT IS THEREFORE ORDERED that defendants' motion for reconsideration (Doc. No. 104) is hereby denied.