785 F.2d 1228
 4 Fed.R.Serv.3d 681
 David L. HOOPER, Plaintiff-Appellant Cross-Appellee,
v.
FEDERAL DEPOSIT INSURANCE CORPORATION, Defendant-Appellee
Cross-Appellant.
FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellee
Cross-Appellant,
v.
David L. HOOPER, Defendant-Appellant Cross-Appellee.
 No. 85-1452
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 March 13, 1986.
 David L. Hooper & Assoc., Abilene, Tex., for plaintiff-appellant cross-appellee.
 Thomas A. Albright, Dallas, Tex., for defendant-appellee cross-appellant.
 Appeals from the United States District Court for the Western District of Texas.
 Before POLITZ, GARWOOD and JOLLY, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 Plaintiff-appellant David L. Hooper appeals the judgment of the district court for defendant-appellee Federal Deposit Insurance Corporation (FDIC) in which the district court held that Hooper received actual notice of the sale of certain collateral, that the sale of the collateral was commercially reasonable, and that FDIC was entitled to recover attorneys' fees. FDIC cross-appeals, claiming that the district court should have given it the highest post-maturity interest rate legally allowable as its note with Hooper provided. We do not decide these issues because we dismiss for lack of appellate jurisdiction under Fed.R.App.P. 4(a)4.
 
 Facts and Proceedings Below
 
 2
 In 1979, Hooper purchased a number of Rolls Royce automobiles for the purpose of leasing them. He also decided to open a repair facility in Midland, Texas. In mid-1980, Hooper incorporated the John J. Schaler III Collection, Inc. to engage in the Rolls Royce agency business. Hooper hired John J. Schaler III to run the agency. Hooper owned a number of Rolls Royces that became the agency's inventory. The agency sold Hooper's Rolls Royces, as well as other cars that it purchased from Rolls Royce, U.S.A.
 
 
 3
 In December 1980, Hooper sold his Midland Rolls Royce agency and all his shares in that corporation to RR Company, Inc. and Schaler. Hooper demanded during negotiations that the purchasers buy certain Rolls Royce and Aston Martin automobiles that he owned. The purchasers' financial condition did not permit this, and the First National Bank of Midland ("the Bank") would not loan funds to the purchasers to buy Hooper's cars. As part of this transaction, however, the Bank agreed to loan Hooper a sum equal to his cost in the cars. Hooper then consigned the automobiles to the John J. Schaler III Collection, Inc. to be sold. Hooper gave the Bank a security interest in the consigned automobiles and delivered the titles to the Bank. The security agreement included a provision for Hooper to pay the Bank's attorneys' fees in the event of default. Hooper then signed a promissory note payable to the Bank and then the Bank advanced over $800,000 against this note. The note had a customary attorneys' fees clause. The agency sold many of the consigned cars, and the principal of Hooper's note was accordingly reduced.
 
 
 4
 On October 14, 1983, the acting Comptroller of the Currency, pursuant to 12 U.S.C. Sec. 192, declared the Bank insolvent and appointed the FDIC as receiver of the Bank. The FDIC then conveyed certain properties of the Bank, including Hooper's note that is the subject of this suit, to the FDIC. As owner and holder of Hooper's note, the FDIC sued Hooper on behalf of the Bank for all overdue principal and interest. Hooper filed suit, claiming that the note was usurious and that the Bank failed to deliver title to an automobile. After removal to the United States District Court for the Western District of Texas, the three actions were consolidated.
 
 
 5
 The issues on appeal concern two sales of the remaining four Rolls Royces that occurred after the maturity date of the note. The Bank arranged the sale of one car to Leasing Associates, Inc. of Houston, Texas after maturity, but before the Bank's collapse. The second sale of collateral was made by the FDIC. Within two to three weeks after the October 14, 1983 failure of the Bank, the Bank's loan recovery personnel went out to the Rolls Royce agency and repossessed the remaining three cars. The FDIC also set up its liquidation process for the collection of certain loans, including Hooper's, that it would keep. After resolving certain legal questions regarding the effect of the dealership's bankruptcy on the FDIC's ability to sell the collateral, the FDIC began selling the three cars. Hooper was credited with the proceeds of the sales. Hooper now asserts that the sales by the FDIC did not comport with the notification and reasonableness requirements of the Texas version of the Uniform Commercial Code regarding the sale of collateral.
 
 
 6
 On June 17, 1985, findings of fact and conclusions of law and judgment were entered denying Hooper relief. Nine days later, on June 26, 1985, the FDIC filed a motion for attorneys' fees, based on the note, and to amend judgment to provide for same, to which Hooper never responded. While the motion was pending, Hooper filed his notice of appeal on July 15, 1985. The FDIC filed a notice of cross-appeal on July 29, 1985. On August 8, 1985, the district court granted the FDIC's motion, made further findings, and awarded the FDIC reasonable attorneys' fees. No further notices of appeal were filed.
 
 Discussion
 
 7
 Rule 4, Fed.R.App.P., requires dismissal of this case for want of appellate jurisdiction. Rule 4(a)(4) provides in relevant part that:
 
 
 8
 "If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party ... under Rule 59 to alter or amend the judgment[,] ... the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the above motions shall have no effect. A new notice of appeal must be filed within the prescribed time measured from the entry of the order disposing of the motion as provided above. No additional fees shall be required for such filing."
 
 
 9
 The Supreme Court recently spoke to the application of Rule 4(a)(4) to appellate court jurisdiction in Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 103 S.Ct. 400, 402-03, 74 L.Ed.2d 225 (1982). In response to appellee's argument that Rule 4(a)(4) "defects" could be waived, the Supreme Court held that a premature notice of appeal made before a Rule 59 motion was ruled upon "was not merely defective; it was a nullity." Id., 103 S.Ct. at 403. The Supreme Court further stated that "[u]nder the plain language of the current rule [Rule 4(a)(4) ], a premature notice of appeal 'shall have no effect'; a new notice of appeal 'must be filed' ... [because] it is as if no notice of appeal were filed at all." Id. Thus the Supreme Court held that a notice of appeal which is premature under Rule 4(a)(4) does not suffice to give a court of appeals appellate jurisdiction. We had reached this result under Rule 4(a)(4) even before Griggs was decided. See Beam v. Youens, 664 F.2d 1275 (5th Cir.1982) (notice of appeal a nullity when filed during pendency of a motion for a new trial); Williams v. Bolger, 633 F.2d 410 (5th Cir.1980) (notice of appeal ineffective when filed during pendency of a motion to reconsider).
 
 
 10
 The question we must decide in this case is whether FDIC's motion for attorneys' fees and to amend judgment in which it sought attorneys' fees under the note and a provision in the security agreement is a motion to alter or amend the judgment for the purposes of Rule 4(a)(1).[1] We addressed this question in a related context when we decided for the purposes of appellate jurisdiction the finality of various attorneys' fees awards as required by 28 U.S.C. Sec. 1291. Holmes v. J. Ray McDermott & Co., Inc., 682 F.2d 1143, 1145-48 (5th Cir.1982), cert. denied, 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983); see Alcorn County v. U.S. Interstate Supplies, Inc., 731 F.2d 1160, 1164 (5th Cir.1984) (applying Holmes ); Oxford Production Credit Association v. Duckworth, 689 F.2d 587, 588 (5th Cir.1982) (same).
 
 
 11
 In Holmes, the leading case in this area, see Todd Shipyards Corp. v. Auto Transportation, S.A., 763 F.2d 745, 750-51 (5th Cir.1985), the Court distinguished attorneys' fees that are an integral part of the merits from those fees that are merely a part of costs. We stated:
 
 
 12
 "When attorney's fees are similar to costs or collateral to an action, a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits. When, however, the attorney's fees are an integral part of the merits of the case and the scope of relief, they cannot be characterized as costs or as collateral and their determination is a part of any final, appealable judgment. The final task for us, then, is to determine the appropriate characterization of the attorney's fees award in this maintenance and cure action." Holmes, 682 F.2d at 1146.
 
 
 13
 There we held that attorneys' fees were part of a cause of action because these fees were requested as damages under the substantive law and the jury was charged on this issue. Id. at 1147. On the other hand, we noted that in cases where attorneys' fees awards were determined by statute, such as under the Civil Rights Attorneys' Fees Awards Act, 42 U.S.C. Sec. 1988, because these fees were designated as costs and sought only after litigation was concluded, they were not part of the merits. Id. (citing Gore v. Turner, 563 F.2d 159, 163 (5th Cir.1978)).
 
 
 14
 We hold that the attorneys' fees awarded in this case were a part of the merits and conclude that Hooper's notice of appeal was premature, thus depriving us of appellate jurisdiction under Rule 4(a)(4). In Oxford, 689 F.2d at 587, a case on the finality aspect of 28 U.S.C. Sec. 1291 appellate jurisdiction, we held:
 
 
 15
 "Attorney's fees arising out of the contract on account of the failure of the maker to perform it, are incidental to it, and arise from the express agreement of the parties, and are as much a part of the controversy, or matter in dispute, as the debt itself. If the attorney's fee was allowed by law it would then probably be held to be a part of the cost of the suit, and not a subject of dispute or controversy." Id. (quoting Cachot v. Russell, 160 Miss. 330, 134 So. 140 (1931)).
 
 
 16
 Oxford was a diversity case, however, and we stated that to determine "whether the present case was 'an integral part of the merits' ... [referring to Holmes, 682 F.2d at 1146], we look to Mississippi [the applicable state] law." 689 F.2d at 588-89.
 
 
 17
 Although the suit now before us was not brought in diversity, we find Texas law controlling because the note and security agreement are governed by Texas law. See United States v. Terrey, 554 F.2d 685, 692-93 (5th Cir.1977) (holding state law applicable to a guaranty dispute involving federal agency where guaranty agreement was controlled by a security agreement that was governed by Texas law and where the application of Texas law would not frustrate the intent of the federal program). Additionally, we observe that the note and security agreement here were signed in Texas, the original parties to the note and security agreement are located in Texas, and the collateral is located in Texas.
 
 
 18
 Texas law, if anything, is more expansive as to the inclusion of attorneys' fees in the substantive amount in controversy than we found to be the case in Mississippi in our decision in Oxford. In Texas, attorneys' fees are included in the amount in controversy as long as the demand for them is not frivolous. See Barnes v. Bituminous Casualty Corporation, 495 S.W.2d 5, 9 (Tex.Civ.App.--Amarillo 1973, writ ref'd n.r.e.). Both attorneys' fees sought under a note or contract, as is the case here, and those sought under a statute are includable. Id. Thus in Texas it is clear that attorneys' fees awardable by note or contract are includable in the amount substantively in controversy in Texas and thus are an "integral part of the merits." Oxford, 689 F.2d at 588 (discussing the Holmes test). As such, it is equally clear that because a motion for such attorneys' fees is an integral part of the merits, it is a motion to alter or amend the judgment for the purposes of Rule 4(a)(4). Since both Hooper's and the FDIC's notices of appeals were filed during the pendency of a motion to alter or amend, we find their notices a nullity and dismiss for lack of jurisdiction.[2]
 
 Conclusion
 
 19
 Having found the only notices of appeal by Hooper and the FDIC nullities, we dismiss for want of appellate jurisdiction.
 
 
 20
 DISMISSED.
 
 
 
 [1]
 The note provides in relevant part:
 "In the event default is made in the payment of this note and it is placed in the hands of an attorney for collection, or suit is brought thereon, or in the event this note is collected through bankruptcy or probate court the makers, sureties, endorsers and guarantors of this note agree to pay a reasonable sum to cover such charges, but in no event shall such additional sum be less than 10% of the full amount due on this note."
 The security agreement provides:
 "Remedies--... Upon the occurrence of any such event of default, and at any time thereafter, Bank may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of the same and exercise any and all of the rights and remedies provided by the Uniform Commercial Code as well as all other rights and remedies possessed by Bank.... Expenses of retaking, holding, preparing for sale, selling or the like shall include Bank's reasonable attorney's fees and legal expenses."
 
 
 [2]
 We do not decide whether the district court's order granting the FDIC's motion to alter or amend is in fact a presently appealable order or whether the deadline for a notice of appeal has passed; we decide only that the notices of appeal by Hooper and FDIC were void