**BECKWITH MACHINERY COMPANY, Appellee,**

v.

**TRAVELERS INDEMNITY COMPANY, Appellant.**

**No. 86–3481.**

United States Court of Appeals, Third Circuit.

Argued March 3, 1987.

Decided April 1, 1987.

William K. Herrington (argued), Herrington and Grater, Pittsburgh, Pa., for appellant.

Deborah P. Powell, Charles Weiss (argued), Thorp, Reed and Armstrong, Pittsburgh, Pa., for appellee.

Before GIBBONS, Chief Judge and SEITZ and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

The procedural posture in which this case arises forces us to confront a heretofore undecided question of appellate jurisdiction for this circuit, namely, whether a district court's order awarding, but not yet quantifying, attorney's fees is a final order [1] from which an appeal may be taken when the fee award arises not as a collateral matter under a separate statutory provision, but instead results from the underlying cause of action (here a contract) which forms the basis of the dispute between the parties. Because we conclude that the attorney's fees in this case are an integral part of the contractual relief sought by Beckwith and such fees have yet to be determined, there is no final order. Thus, we will dismiss the appeal without reaching the merits of the dispute.[2]

### I.

The plaintiff-appellee, Beckwith Machinery Company (Beckwith) filed this diversity action against defendant-appellant Travelers Indemnity Company (Travelers) alleging a breach of an insurance contract when Travelers, the insurer, withdrew its defense of Beckwith in an underlying action.[3] The district court entered an order on July 11, 1986 granting Beckwith's motion for summary judgment and denying Travelers' motion for summary judgment. The district court entered a judgment on behalf of Beckwith in the amount of $100,000 plus interest from November 12, 1982 in order to reimburse Beckwith for its settlement payment made to Trumbull Corporation in the underlying action. Additionally, the district court awarded Beckwith the attorney's fees and costs incurred in its defense of the underlying action. Finally, the district court ordered that Beckwith was entitled to attorney's fees and costs for the trial of the instant breach of contract action. The district court has not yet quantified either of these attorney's fee awards. 638 F.Supp. 1179.

### II.

The question of the finality of a district court's order disposing of the merits and ordering, but not quantifying, attorney's fees is one with which this court has wrestled for some time.[4] The question has been definitively settled with regard to cases involving unquantified attorney's fees when the award of fees is authorized by a separate statute as a *collateral* matter. For such cases, this court, resting on *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982), has adopted

1. Section 1291 of 28 U.S.C. provides, in pertinent part: "[t]he court of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States...."

2. Travelers' appeal on the merits raises essentially three issues: (1) whether the district court erred in granting summary judgment because disputed issues of material fact remained; (2) whether the district court erred in estopping Travelers from denying coverage of Beckwith; and (3) whether the district court erred in awarding the above-mentioned attorney's fees.

3. The underlying action involved a suit brought by Trumbull Corporation against Beckwith and Caterpillar Tractor Company, essentially concerning defective machinery.

4. To trace the history of this controversy, see *Baughman v. Cooper-Jarrett Inc.*, 530 F.2d 529, 531 n. 2 (3d Cir.), *cert. denied*, 429 U.S. 825, 97 S.Ct. 78, 50 L.Ed.2d 87 (1976); *Richerson v. Jones*, 551 F.2d 918, 921–22 (3d Cir.1977); *DeLong Corp. v. Raymond International Inc.*, 622 F.2d 1135 (3d Cir.1980); *O'Hommel Co. v. Ferro Corp.*, 659 F.2d 340, 354 (3d Cir.1981) *cert. denied*, 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982); *Croker v. The Boeing Co.*, 662 F.2d 975 (3d Cir.1981) (in banc); and *Halderman v. Pennhurst State School & Hospital*, 673 F.2d 628, 643–45 (3d Cir.1982) (in banc) (sur petition for rehearing), *cert. denied*, 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984).

the rule that an order deciding the merits of a case is final and therefore appealable separate and apart from, as well as prior to, an order quantifying the attorney's fees awarded under the authority of a separate statute. *Halderman v. Pennhurst State School & Hospital,* 673 F.2d 628, 643–44 (3d Cir.1982) (in banc) (sur petition for rehearing).

In *White v. New Hampshire,* the Supreme Court determined that a claim for attorney's fees under 42 U.S.C. § 1988 "raised legal issues collateral to the main cause of action," *White,* 445 U.S. at 451, 102 S.Ct. at 1166, and such a request was not a motion to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure. The Court maintained that "[u]nlike other judicial relief, the attorney's fees allowed under § 1988 are not compensation for the injury giving rise to an action." *Id.* at 452, 102 S.Ct. at 1166. Moreover the Court asserted that the awarding of attorney's fees under 42 U.S.C. § 1988 "is uniquely separable from the cause of action to be proved at trial." *Id.*

This court has never addressed the question of whether the *White* holding was intended to apply not only to cases in which the attorney's fee question arises as a collateral matter under a separate statutory provision, but also to cases in which the fee award arises as an integral part of the merits of the dispute. We note at the outset that there is a split among the circuits on this question.

### III.

The Second Circuit has recognized the collateral/integral distinction and held that "where attorney's fees are a contractually stipulated element of damages, a judgment is not final until the fees have been determined." *F.H. Krear & Co. v. Nineteen Named Trustees,* 776 F.2d 1563, 1564 (2d Cir.1985). *White v. New Hampshire, supra,* was considered "inapposite" because it concerned awards of attorney's fees pursuant to a separate statute rather than a contract. *Id.* ("*White* ... does not lead us to abandon our clear rule that contractually stipulated awards must be determined before a judgment is final."); *see also Lewis v. S.L. & E., Inc.,* 746 F.2d 141, 143 (2d Cir.1984) (*White* distinguished; attorney's fees in shareholder derivative suit were "integral to a final judgment, not merely collateral to it"); *Johnson v. University of Bridgeport,* 629 F.2d 828 (2d Cir.1980); *Union Tank Car Co. v. Isbrandtsen,* 416 F.2d 96 (2d Cir.1969); *Aetna Casualty & Surety Co. v. Giesow,* 412 F.2d 468 (2d Cir.1969).

The Fifth Circuit has likewise recognized a distinction, and it has fashioned an approach that turns upon "the nature of the plaintiff's cause of action and the source of his entitlement to attorney's fees." *Rodriguez v. Handy,* 802 F.2d 817, 819 (5th Cir.1986). A fuller articulation of the Fifth Circuit test for finality appears in *Holmes v. J. Ray McDermott & Co.,* 682 F.2d 1143 (5th Cir.1982), *cert. denied,* 459 U.S. 1107, 103 S.Ct. 732, 74 L.Ed.2d 956 (1983):

When attorney's fees are similar to costs ... or collateral to an action ... a lack of determination as to the amount does not preclude the issuance of a final, appealable judgment on the merits. When, however, the attorney's fees are an integral part of the merits of the case and the scope of relief, they cannot be characterized as costs or as collateral and their determination is a part of any final, appealable judgment.

*Holmes,* 682 F.2d at 1146.

The Fifth Circuit has applied the *Holmes* test in later cases declaring that an appellate court does not have jurisdiction before attorney's fees have been quantified. *Oxford Production Credit Ass'n v. Duckworth,* 689 F.2d 587 (5th Cir.1982) (under Mississippi law, attorney's fees provided for by the contract are integral to the merits and not collateral); *Alcorn County v. U.S. Interstate Supplies, Inc.,* 731 F.2d 1160, 1165 (5th Cir.1984) (attorney's fees in a RICO action are integral to the merits because the RICO statute "both creates the plaintiff's cause of action and provides for an award of damages"); *Todd Shipyards Corp. v. Auto Transportation, S.A.,* 763 F.2d 745, 751 (5th Cir.1985) (in an action for

breach of implied warranties of workman-like performance, "an award of attorney's fees cannot be regarded as collateral to the action but forms an integral part of the scope of relief"); *Hooper v. FDIC*, 785 F.2d 1228, 1232 (5th Cir.1986) (under Texas law, motions for attorney's fees sought under a note or contract are an integral part of the merits; appeal dismissed for want of appellate jurisdiction); *Bilmar Drilling, Inc. v. IFG Leasing Co.*, 795 F.2d 1194 (5th Cir.1986) (under contract theory, attorney's fees and expenses are "not merely collateral to the merits," whereas motion under 28 U.S.C. § 2202 for attorney's fees and expenses is collateral).

The Eleventh Circuit has also adopted the Fifth Circuit approach. *McQurter v. City of Atlanta*, 724 F.2d 881, 882 (11th Cir.1984); *Certain British Underwriters at Lloyds of London, England v. Jet Charter Service, Inc.*, 739 F.2d 534, 535 (11th Cir.1984); *C.I.T. Corporation v. Nelson*, 743 F.2d 774, 775 (11th Cir.1984).[5]

Although the Second, Fifth, and Eleventh Circuits have chosen this case-by-case approach, other circuits have declined to recognize any distinction between an order awarding § 1988 fees and an order awarding fees in a contractual context. They instead adopt a bright-line approach, holding that all orders awarding attorney's fees whether or not quantified, are orders concerning a collateral issue that does not affect the finality of a merits order.

The Ninth Circuit opted for this bright-line approach in *Int'l Ass'n of Bridge, Structural, Ornamental, and Reinforc-*

*ing Ironworkers' Local v. Madison Industries*, 733 F.2d 656 (9th Cir.1984). That court offered three reasons for rejecting a case-by-case approach. First the court noted that such an approach would "spawn a whole new body of law" which would lead to an unnecessary expenditure of judicial resources. Second, the court was concerned that the issue of timeliness of appeal could limit counsel's post-judgment litigation strategy. Third, because the court believed that the bright-line rule provides attorneys with the best device for determining the time for appeal, it reasoned that the rule would reduce the odds of an "unfair" determination that an appeal was untimely.

Similarly, the Seventh Circuit has held that attorney's fees provided by statute are no different from those provided by contract. In *Exchange National Bank of Chicago v. Daniels*, 763 F.2d 286, 292–293 (7th Cir.1985), the court concluded "that the source of the power to award fees does not matter. The finality of a decision depends on the kinds of issues the court determines, not on the source of authority for the court's decision." *Id.* at 293.

The Sixth and Eight Circuits have also followed this approach. *See Morgan v. Union Metal Manufacturing*, 757 F.2d 792, 795 (6th Cir.1985) (refusing to adopt an integral/collateral distinction "even though it may occasionally prove harsh" because such a distinction would not "best serve[ ] the interests of litigants and the court"); *United States v. Estridge*, 797 F.2d 1454, 1459 (8th Cir.1986) ("We find no rational

---

5. We also note that both the First Circuit and the District of Columbia Circuit have recognized the basis for drawing a collateral/integral distinction, but both have declined to take a position before the issue was squarely presented.

    In *Crossman v. Maccoccio*, 792 F.2d 1 (1st Cir.1986), the First Circuit identified three different types of attorney's fees: (1) those which are similar to costs, (2) those which are an integral part of the case or scope of relief sought, and (3) those which are collateral to an action. It noted that some courts had concluded that "in the first and third type of cases, a judgment on the merits is not rendered unappealable simply because the amount of attorney's fees has not been determined, but that in the second type of case, determination of the

amount of attorney's fees is part of any final, appealable judgment." *Id.* at 3. Because the case before it involved an award of attorney's fees that was clearly collateral, the court declined to decide whether it would adopt a different rule for those cases in which the award of attorney's fees was an "integral part" of the merits.

    Similarly, the District of Columbia Circuit, in *Shultz v. Crowley*, 802 F.2d 498, 501–02 n. 1 (D.C.Cir.1984), recognized that some courts have drawn a distinction between attorney's fees based on statutory and nonstatutory sources of authority. The court, however, declined to decide the issue and limited its "discussion and holding to the issues raised by requests for statutory attorney's fees." *Id.*

basis for determining that a claim for attorney's fees is collateral to and independent of the merits for some purposes but not for others").

## IV.

■ After careful consideration of the various arguments and authorities, we reject the bright-line approach to appealability and hold that when the award of attorney's fees arises out of and is part of the claimant's cause of action and is not separately authorized by a statute providing for such an award, an order does not become final until the attorney's fees are quantified.

Such a result is most appropriate in those cases where appellate review of an order awarding attorney's fees requires a detailed inquiry into the merits of the proceedings. Such is the case when, as in the instant appeal, the fees awarded are part and parcel of the relief sought and of the damages incurred. Were it otherwise, we would needlessly be encouraging piecemeal appeals with the concomitant waste of scarce judicial resources.

Indeed, for purposes of determining the finality of an order from which appeal may be taken, we can find no basis in logic for distinguishing the case before us from that of a breach of contract action which, among other damages claimed, involves liquidated damages. In the latter case, a district court's summary judgment order holding the defendant liable for breach of contract does not become a final order until the court has quantified not only the contract damages, but also the liquidated damages.

In the present case we have an insurance company which was sued for failing to defend its insured. The attorney's fees that the insured was required to spend to defend itself in the underlying lawsuit form a substantial portion of the damages claimed. Thus, until the attorney's fee aspect of the order is quantified, the order, as in the hypothetical contract case, necessarily lacks finality as it has not ended the litigation on the merits and there is still more for the court to do.[6]

*White v. New Hampshire, supra,* simply cannot be read to support the proposition that all attorney's fee determinations are to be deemed collateral. In *White,* the Court held that an attorney's fee request was not a motion to alter or amend the judgment. But in *White,* the fee request arose under a separate statutory provision (42 U.S.C. § 1988), and fees could therefore be awarded without modifying or upsetting the judgment on the merits.

In the case before this court, however, the fee award is an integral part of the damage award and arises directly out of the initial determination of liability.[7] Thus, the fee award is a part of the merits judgment itself. As a consequence, any motion to modify or upset the award of attorney's fees would necessarily fall within the quintessential Rule 59 motion to reconsider, alter, or amend the judgment—a situation vastly different than the situation considered in *White.* Reason, common-sense and logic compel the conclusion that the Supreme Court did not intend its holding in *White* to be applied to a case such as this.

We are aware that some commentators have recommended the bright-line approach, noting that its chief advantage is

---

**6.** A final order has been defined as one which "ends the litigation on the merits and leaves nothing for the court to do but execute judgment." *Firestone Tire & Rubber Co. v. Risjord,* 449 U.S. 368, 373, 101 S.Ct. 669, 673, 66 L.Ed.2d 571 (1981).

**7.** We observe that Beckwith's complaint demanded a jury trial. Thus, if summary judgment had been denied and Beckwith, after trial, had obtained a favorable jury verdict, then the jury would have been charged with the task of determining the total damages due Beckwith from Travelers. The attorney's fees Beckwith

incurred in defending the underlying Trumbull lawsuit would then have been a portion of that total damage award. *See e.g., F.H. Krear & Co. v. Nineteen Named Trustees,* 776 F.2d 1563, 1564 (2d Cir.1985). Indeed, at oral argument, the order which granted Beckwith $100,000 was characterized as a partial summary judgment. Partial summary judgment cases are not appealable in the absence of a Fed.R.Civ.P. 54(b) certification. *See Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 739–44, 96 S.Ct. 1202, 1204–06, 47 L.Ed.2d 435 (1976).

clarity. *See, e.g.* 15 C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3915 at 268 (1986 Supp.). We too recognize the importance in having a rule that will not unduly complicate identification of the test or event that results in this court acquiring jurisdiction. But the value in having a bright-line rule is severely compromised when the generality of the rule masks important underlying differences—differences that undermine the long-settled jurisdictional principle that appeals may be taken only from orders that are final in that they have disposed of all parties and of all issues. Permitting the fee award in a case such as this one to be treated separately from the merits order of which it is a part can only lead to piecemeal appeals—a practice long since renounced by every appellate court.

The considerations giving rise to finality as a condition for review and rejecting piecemeal appeals has been stated succinctly in *Cobbledick v. United States:*

Finality as a condition of review is an historic characteristic of federal appellate procedure. It was written into the first Judiciary Act and has been departed from only when observance of it would practically defeat the right to any review at all. Since the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice, Congress from the very beginning has, by forbidding piecemeal disposition on appeal of what for practical purposes is a single controversy, set itself against enfeebling judicial administration. Thereby is avoided the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment. To be effective, judicial administration must not be leaden-footed.

Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause.

*Cobbledick v. United States,* 309 U.S. 323, 324–25, 60 S.Ct. 540, 541, 84 L.Ed. 783, (1940) (footnotes omitted).

Therefore, we conclude that a merits order cannot vest us with jurisdiction when it also provides for attorney's fees, not yet quantified, which fees were part of and arose out of the cause of action but were not separately authorized by statute. The time for appeal in such a case is to be measured from the entry of the order ultimately quantifying the outstanding fee issue.[8]

## V.

■ Applying this holding to the facts of the present case, it is clear that the order from which Travelers appealed is not a final order which will vest jurisdiction in this court. The district court found that Travelers had breached its duty to defend Beckwith. The court then awarded Beckwith its attorney's fees for the Beckwith-Trumbull underlying litigation and the attorney's fees incurred by Beckwith in prosecuting the instant action. Both awards of attorney's fees remain unquantified.

The fees that Beckwith incurred when it was forced to defend the underlying Trumbull lawsuit, were incurred as a direct result of Travelers' breach of its duty to defend Beckwith under the insurance contract. This award of attorney's fees was part of Beckwith's cause of action and was claimed by Beckwith as a part of the relief which it sought against Travelers. These fees were not the product of a separate statutory authorization. Thus, in the absence of an order quantifying this award of attorney's fees, the order from which Travelers appealed lacked finality.[9]

---

**8.** In so holding we obviously do not disturb the settled jurisprudence of this circuit, that an appeal may be taken from an order that finally resolves the merits of the case even if attorney's fees which arise as a collateral matter under a separate statute are not yet quantified. In this latter situation, the time for appeal is to be measured from the entry of the underlying mer-

its order, regardless of when the attorney's fees are finally quantified. *West v. Keve,* 721 F.2d 91, 94–95 (3d Cir.1983).

**9.** The order appealed from, in full states:

"AND NOW, to-wit, this 11th day of July, 1986, for the reasons stated in the foregoing

In light of our holding that the failure to quantify attorney's fees in the Beckwith-Trumbull litigation resulted in a non-final order, it is not essential for us to consider the effect on appealability of the failure to quantify the fee award in the instant Beckwith-Travelers litigation. Although we need not reach that issue because we have already held that the order of the district court is not final, we observe that, in any event, the award of attorney's fees to Beckwith for the instant action should be regarded no differently than the award of attorney's fees in the Beckwith-Trumbull litigation inasmuch as both were incurred as a direct consequence and result of Travelers' breach of the insurance contract, and both constitute a part of the damages due Beckwith.

We will dismiss Travelers' appeal, without prejudice, for lack of an appealable order.

GIBBONS, Chief Judge, dissenting:

Any system of adjudication that provides for appellate review should, for the benefit of all participants in that system, have at least these three features: 1) clear rules as to when appellate review may or must be sought; 2) workable rules that tend to avoid unnecessary or premature adjudications at both the original and the appellate levels of the system; and 3) rules that in operation do not tend to multiply disputes which require judicial resolution. The monstrous edifice which the federal judiciary has erected as a temple to that great white whale, the final judgment rule, satisfies none of these criteria. Moreover, the syllogistic process whereby federal judges impose one bad rule as the inevitable logical consequence of prior bad rules is mechanical jurisprudence at its worst. At all levels, the federal judiciary has demonstrated its incapacity to deal intelligently with the subject of when interlocutory review should be available. *See Civil Appellate Jurisdiction* (pt. 1), 47 Law and Contemp. Probs., Spring 1984, at 1. The whole subject cries out for congressional attention.

The opinion of the court in this case is typical. Given the opportunity to adopt a bright-line rule that would give clear guidance as to when an appeal on the merits must be taken, would avoid unnecessary litigation at the trial court level over quantification of liability for attorneys' fees, and would avoid future adjudications over when appeals may be taken, the majority rejects it by drawing the logical but impractical distinction between statutory liability for fees and liability for fees growing out of a contractual undertaking. One consequence of the majority's approach is that the trial court will have to adjudicate a fee dispute which, if the appellant is correct on the underlying liability issue, need never have been resolved. Another consequence is that litigants in future cases in which fees are sought will have to determine whether the case falls within the majority's holding here, or within the Supreme Court's holding in *White v. New Hampshire Department of Employment Security*, 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) —a decision which, as pointed out hereafter, will not always be easy. A third consequence is that in any doubtful case, the party which loses on the liability issue still will always attempt an interlocutory appeal in order to avoid the risk of a later holding that an appeal on liability is untimely. This court therefore will be required to adjudicate an issue which need never have been resolved had the *White v. New Hampshire*

Opinion, it is hereby ORDERED, ADJUDGED and DECREED that:

1. Plaintiff's Motion for Summary Judgment in the above-captioned matter be and hereby is GRANTED;

2. Defendant's Motion for Summary Judgment in the above-captioned matter be and hereby is DENIED;

3. Judgment is entered in favor of the Plaintiff for $100,000.00 with interest from November 12, 1982;

4. Counsel for the Plaintiff are directed to file an affidavit within twenty (20) days of the date of filing this Order setting forth the hours reasonably expended by them in defending Plaintiff in the Trumbull case and in representing Plaintiff in this action along with their usual hourly rates for such services;

5. Counsel for the Defendant may respond, by affidavit, to the Plaintiff's submission within ten (10) days thereafter."

Appendix at 993.

rule been applied across the board to all attorneys' fee disputes.

In this case, the relationship between the parties which gives rise to the dispute is an insurance contract that contains two independent undertakings by Travelers Indemnity Company—an indemnity undertaking and a defense undertaking. The insured, Beckwith Machinery Company, after settling the underlying liability claim, sued to enforce both the indemnity obligation and the defense obligation. It also sought recovery for the attorneys' fees incurred in prosecuting the instant action. The insurance contract makes no provision for the payment of attorneys' fees. They are due, if at all, only because the common law or a Pennsylvania statute, modifying the American rule that each party should bear its own fees, imposes a fee obligation on an insurance company for breach of contract.

The statement in the majority opinion that "the award of attorney's fees to Beckwith for the instant action should be regarded no differently than the award of attorney's fees in the Beckwith-Trumbull [liability] litigation inasmuch as both were incurred as a direct consequence and result of Travelers' breach of the insurance contract" ignores the fact that there is no contractual undertaking to pay fees in a suit for breach of either the indemnity or the defense covenant. Thus, in the future, the majority opinion will be cited for the proposition that any fee award in a contract dispute, even when predicated upon a state statute or a state common law rule modifying the American rule, is "a result of the breach of contract."

Such a rule is inconsistent with the holding in *White v. New Hampshire*, since there is no analytical difference between the federal statute modifying the American rule which that case addressed and the Pennsylvania law modifying the American rule which the majority opinion addresses in reference to recovery of fees for prosecuting the instant suit. In both cases, although the fees are assessed because of a breach of a legal obligation separate from the fee obligation, they can be classified, if a judge decides to do so, as a "result" of

the breach of that obligation. Further, the presence of the defense covenant in the insurance contract does not distinguish the two situations because that covenant does not by its terms apply to the instant lawsuit and the fees sought in the instant lawsuit are for the enforcement of both the indemnity obligation and the defense covenant. The majority's equating of fees recoverable under the terms of the insurance contract and fees recoverable as a matter of Pennsylvania law apart from that covenant is therefore unwarranted. It is also unfortunate, since the majority's casual remark will surely generate future litigation both within and outside the insurance contract context.

Postponement of the quantification of liability for the cost of defense of the Beckwith-Trumbull lawsuit presents a closer question which, because of the language of Fed.R.Civ.P. 54(b), must be considered separately in light of the policy considerations which led the Supreme Court to decide *White v. New Hampshire*. The *White v. New Hampshire* Court held that application for a statutory fee award could be considered after the time provided in Fed. R.Civ.P. 59(e), because "the court's decision of entitlement to fees will ... require an inquiry separate from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed' " and because "application of Rule 59(e) ... is [n]either necessary [n]or desirable to promote finality, judicial economy, or fairness." 455 U.S. at 451–52, 102 S.Ct. at 1166. Thus, we should consider whether the fee inquiry requires an inquiry separate from the merits of the dispute over the indemnity obligation, and whether postponing review until after that inquiry is made promotes finality, judicial economy, and fairness.

Although the defense covenant and the indemnity covenant are contained in the same contract, they are clearly independent undertakings. *See, e.g., Montgomery Ward & Co. v. Pacific Indemnity Co.*, 557 F.2d 51 (3d Cir.1977); *Kelmo Enterprises, Inc. v. Commercial Union Insurance Co.*, 285 Pa.Super. 13, 426 A.2d 680 (1981). Indeed, they are frequently litigated in sepa-

rate lawsuits and involve separate claims for relief. A decision on one claim is unquestionably collateral to the other. Thus, for example, an insurance company might lose a declaratory judgment action that it is obliged to defend, and later successfully defend an action seeking to enforce its indemnity undertaking. In this case, it so happens that both claims were asserted in the same lawsuit because the dispute arose too late to resolve the defense obligation before the underlying liability claim was settled. This happenstance should not, however, obscure the fact that the claims in issue in this action, while both contractual, are in every real sense collateral to each other.

It also happens that in this case the legal and factual issues with respect to the insurance company's indemnity obligation and its defense obligation are so similar that a decision in favor of Beckwith on the indemnity claim probably will collaterally estop Travelers with respect to liability on its defense covenant liability. This fact should not be dispositive, however, for collateral estoppel often operates in separate lawsuits. Were we to affirm on the indemnification issue, the only issue likely to remain unresolved would be the amount of the fees—not because the fee claim is not collateral to the indemnification claim, but by operation of collateral estoppel. On the other hand, were we to reverse on the indemnity claim, since the defense covenant is broader than the indemnity covenant, liability for defense costs and the amount thereof might still be open for subsequent review. This difference probably will appear only in disputes over insurance contracts. In most other contracts, the liability for fees will be coextensive with the contractual undertaking.

The question presented with respect to an insurance company's contractual defense covenant is, therefore, slightly different from that presented in statutory fee cases providing for an award to the "prevailing party." The insurance company might not prevail on the cost of defense even if it prevailed on the indemnity obligation. This difference does not persuade me that the *White v. New Hampshire* rule should not apply. The question we must consider is whether there are policy reasons for, in effect, prohibiting the district court from separating the final disposition of the fee dispute from the final disposition of the dispute over the indemnity obligation.

One argument in favor of such a prohibition is that the contracting party is entitled to have the same jury determine the amount of the fees reasonably incurred in defense of the underlying liability claim. This argument is not pressed by either Travelers or Beckwith, for neither party objected to the postponement of the quantification of fees; indeed neither party contends that we lack appellate jurisdiction. Assuming the argument were open, however, I would reject it because the claims for indemnification and for costs of defense are so analytically distinct that there can be no serious argument that the seventh amendment requires their submission to the same jury. *See Gasoline Products Co. v. Champlin Refining Co.*, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188 (1931) (seventh amendment does not prohibit two issues from being tried separately where they are "distinct and independent" of each other). Thus, if the issue were before us, I would hold that the trial court could try liability for breach of the indemnity contract and liability for contractual defense costs before separate juries.

We are all too familiar with the fact that litigation over the quantification of attorneys' fees has, since the development of the trend away from the American rule, become a very time-consuming enterprise. The *White v. New Hampshire* rule has the considerable merit of permitting district courts to avoid such litigation until such time as it is clear that quantification of fees is necessary. The merit of the *White v. New Hampshire* rule applies equally to contract fee disputes. In most of these cases the underlying contractual liability dispute will fully resolve the liability for fees, leaving open only their quantification. In the insurance contract context, where the defense obligation and the fee obligation are not coextensive, a rare case

may arise in which resolution of liability for indemnification will leave open a liability issue for resolution in the reserved fee dispute. The possibility of such a dispute (which in this case is practically non-existent) is not a sufficient reason for carving out an exception to the *White v. New Hampshire* rule, even for insurance contract litigation.

If there were countervailing considerations operating at the appellate level, a case might be made for imposing on the district courts the obligation of quantifying fees before entering a judgment on liability in every contract fee case. There are none in the instant case. As I have pointed out, in almost every case, the liability issues, usually legal, will control the liability for fees issue. If they are decided adversely to the claim the appellate court will never see the fee dispute. If they are not, a very large percentage of the disputes over quantification of fees will be settled. For the few disputes that are not, the cost to the entire federal judicial system of having a second panel consider an appeal over the fee issue, when compared with the cost of imposing the obligation on the trial courts of determining the amount in every case, is insignificant.

We spend far more time resolving litigation over appealability than would ever be spent in considering separate appeals in contract fee disputes. Thus, I would follow the sound precedents of those courts of appeals which have applied *White v. New Hampshire* as a bright-line rule governing all disputes over attorneys' fees, regardless of whether the exception to the American rule is contractual, common law, or statutory. *See, e.g., United States v. Estridge,* 797 F.2d 1454, 1459 (8th Cir.1986); *Exchange National Bank of Chicago v. Daniels,* 763 F.2d 286, 292–94 (7th Cir.1985); *Morgan v. Union Metal Manufacturing,* 757 F.2d 792, 795 (6th Cir.1985); *International Ass'n of Bridge, Structural, Ornamental, and Reinforcing Ironworkers' Local Union 75 v. Madison Industries, Inc.,* 733 F.2d 656, 657–59 (9th Cir.1984).

That great white whale, the final judgment rule, has become so encrusted with the barnacles of needless complexity that it has become a beached carcass. We should avoid it in this case and decide now the merits of the rather simple liability issues presented by this appeal.