Jorge SUAREZ, Plaintiff,

v.

CAMDEN COUNTY BOARD OF CHO-
SEN FREEHOLDERS, Warden William
C. Strang, Jr., Steven M. Petrillo, Cap-
tain M. Wright, Dr. William Young,
Camden County Department of Correc-
tions, John Does 1–6, Jane Does 1–5 and
Richard Roes 1–5, Defendants.

Civil Action No. 95–3830(JEI).

United States District Court,
D. New Jersey.

July 11, 1997.

Jorge Suarez, New Jersey State Prison, Trenton, NJ, pro se.

Higgins, Slachetka & Long, P.A. by John A. Mercer, Laurel Springs, NJ, for Camden County Bd. of Chosen Freeholders, William Strang, Steven Petrillo, M. Wright, Camden County Department of Corrections.

Paarz, Master, Koernig, Crammer, O'Brien & Bishop by Beth A. Burton, Pleasantville, NJ, for William Young.

IRENAS, District Judge:

*Pro se* plaintiff Jorge Suarez brings this § 1983 action to recover compensatory and punitive damages for inadequate medical care he allegedly received while incarcerated at Camden County Correctional Facility ("CCCF"). Defendant William Young, M.D. ("Dr.Young") and plaintiff filed cross-motions for summary judgment pursuant to Fed. R.Civ.P. 56. Because the Superior Court of New Jersey, Law Division, has issued a final judgment on plaintiff's constitutional and state claims against Dr. Young, the doctrine of collateral estoppel (issue preclusion) bars these claims against him. Liability may not be imputed to the two municipal defendants under a respondeat superior theory and the record does not reveal the type of deliberate indifference by any defendant necessary to support an Eighth Amendment claim against them. Accordingly, summary judgment will be granted on all claims in favor of all defendants.

## I. BACKGROUND

Plaintiff alleges that on August 13, 1993, while he was incarcerated and awaiting trial at CCCF, he sought and was denied medical care for nausea, vomiting, dizziness, constipation, thirst and weight loss. Compl. ¶ 18. On August 17, 1993, plaintiff, appeared before Superior Court Judge James J. Cianci on homicide charges. When he complained of illness Judge Cianci ordered a medical examination. *See* Pl.Ex. D. Dr. Young, the jail physician, performed the examination and reported to the judge on August 18, 1993, that plaintiff had "no abdominal tenderness, normal bowel sounds and no evidence of distress." *See id.*

On August 18, 1993, plaintiff returned to court and asserted once more that he felt ill. The judge then entered an "Order for Hospital Evaluation" directing that plaintiff be taken to the hospital for a complete "diagnostic work up consistent with [plaintiff's] history and symptomology." *See* Pl.Ex. E. On the same day plaintiff was transported to West Jersey Hospital where he was diagnosed with late-onset diabetes and hospitalized for eight days. *See* Pl.Ex. E, F.

On August 8, 1995, plaintiff sued Dr. Young, the Camden County Board of Chosen Freeholders, the Camden County Department of Corrections, the CCCF warden, a corrections officer and a Camden County Freeholder in the Superior Court of New Jersey, Law Division, alleging violations of his Sixth, Eighth and Fourteenth Amendment rights and medical malpractice. *See* Def. Ex. E at 1. On the same day plaintiff instituted an action against the same defendants in this Court alleging the same constitutional violations. *See* Compl. ¶ 1.

On December 6, 1996, the Court denied plaintiff's motion to consolidate state and federal claims. On December 20, 1996, Superior Court Judge John B. Mariano granted summary judgment in favor of Dr. Young and dismissed plaintiff's complaint with prejudice.[1] Defendant filed the instant motion for summary judgment on June 17, 1997. On June 24, 1997, plaintiff filed a cross-motion for summary judgment.

## II. DISCUSSION

### A. *Summary Judgment*

Under Fed.R.Civ.P. 56(c), a court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The non-moving party may not simply rest on its pleadings to oppose a summary judgment motion but must affirmatively come forward with admissible evidence establishing a genuine issue of fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

In deciding a motion for summary judgment, the Court must construe the facts and inferences in a light most favorable to the non-moving party. *Pollock v. American Tel. & Tel. Long Lines,* 794 F.2d 860. 864 (3d Cir.1986). The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The substantive law governing the dispute will determine which facts are material, and only disputes over those facts "that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A genuine issue for trial does not exist "unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir.1987)(Becker, J., concurring).

### B. *Liability of Dr. Young*

On the same day plaintiff filed the instant suit, he filed a complaint in state court. The state court granted Dr. Young's motion for summary judgment and dismissed plaintiff's complaint in its entirety.[2] Pursuant to the doctrine of *res judicata,* plaintiff's claims against Dr. Young are barred.

■ The Supreme Court has recognized that "*res judicata.* . . . relieves[s] the parties

---

1. Judge Mariano granted summary judgment in favor of defendant Dr. Young only. The order did not include defendants Camden County Board of Chosen Freeholders, Camden County Department of Corrections, William C. Strang, Steven M. Petrillo, Captain M. Wright, John Does 1–6, Jane Does 1–5 or Richard Roes 1–5.

2. All of the defendants in the instant suit were also defendants in the prior state court action. Nevertheless, the state court order dismissing plaintiff's complaint referenced only Dr. Young's motion for summary judgment. Therefore, we dismiss on collateral estoppel grounds only as to Dr. Young.

of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Montana v. United States,* 440 U.S. 147, 153–54, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). The Supreme Court has "noted with implicit approval the view of other federal courts that *res judicata* principles fully apply to civil rights suits brought under [§ 1983]." *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 416, 66 L.Ed.2d 308 (1980).

■■■ "[A] federal court applying preclusion principles is bound by the Full Faith and Credit statute, 28 U.S.C. § 1738, and must give a prior state judgment the same effect as would the adjudicating state." *Gregory v. Chehi,* 843 F.2d 111, 116 (3d Cir.1988)(footnote omitted).[3] The result is the same in § 1983 suits brought in federal courts. *See id.* at 117. "When determining the judgment preclusion effect of a judgment rendered by a state court, we are referred to the law of the rendering state." *Harris v. Pernsley,* 755 F.2d 338, 342 (3d Cir.), *cert. denied,* 474 U.S. 965, 106 S.Ct. 331, 88 L.Ed.2d 314 (1985); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *Allen,* 449 U.S. at 95–96, 101 S.Ct. at 415–16.

Judge Louis H. Pollak recently noted that: The term "res judicata" has both a broad and a narrow meaning. Narrowly, … it refers only to claim preclusion…. However, the preferred usage of the term encompasses both claim and issue preclusion.

*Venuto v. Witco Corp.,* 117 F.3d 754 (3d Cir.1997).

■■■ In this case we are concerned with collateral estoppel[4] which is a branch of the broader law of *res judicata* that bars relitigation of any issue actually determined in a prior action between the parties. It is a somewhat narrower concept than claim preclusion which is normally associated with the term res *judicata.* See *Allesandra v. Gross,* 187 N.J.Super. 96, 103–104, 453 A.2d 904, 907–908. The requirements for applying issue preclusion are set forth in *Restatement (Second) of Judgments* § 27:

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

■■■ In determining whether a judgment is final for the purposes of allowing an appeal as of right, it is generally required that the trial court have resolved all issues as to all parties. See *Cobbledick v. United States,* 309 U.S. 323, 324, 60 S.Ct. 540, 540–41, 84 L.Ed. 783 (1940)("Finality as a condition of review is an historic characteristic of federal appellate procedure."); *Beckwith Mach. Co. v. Travelers Indem. Co.,* 815 F.2d 286, 291 (3d Cir.1987)(emphasizing that "appeals may be taken only from orders that are final in that they have disposed of all parties and of all issues"). As a general rule this type of finality is required of any judgment which is later used as a basis for claim preclusion in a subsequent law suit. *See Restatement (Second) of Judgments* § 13 cmt. b.

■ However, for purposes of issue preclusion or collateral estoppel a court determination in the first action can be accepted as final if the issue to be deemed resolved has been fully and fairly litigated and the court has made clear that the particular issue has

---

3. 28 U.S.C. § 1738 provides in part:

The … judicial proceedings of any court of any … State … shall have the same full faith and credit in every court within the United States and its Territories and Possession as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

"This statute supplements the provision found in Article IV, § 1 of the Constitution, which applies full faith and credit only to state courts." *See Gregory,* 843 F.2d at 116.

4. Although issue preclusion and collateral estoppel are often considered synonymous, the *Restatement* (Second) of Judgments § 17 cmt. c. recognizes two variations of issue preclusion, collateral estoppel and direct estoppel, the former applying when the prior action is based on a different claim and the latter when it is based on the same claim. While the instant case really involves direct estoppel, we use the more common term "collateral estoppel" in the text of the opinion.

been completely resolved. *See Hills Dev. Co. v. Township of Bernards,* 103 N.J. 1, 510 A.2d 621, 652 (1986)("In this regard, we note that general principles of law have long held that *res judicata* is applicable only when a final judgment is rendered, and the doctrine of collateral estoppel applies whenever an action is 'sufficiently firm to be accorded conclusive effect.' ") (citation omitted); *In re Brown,* 951 F.2d 564, 569 (3d Cir.1991)("Unlike claim preclusion, the effectiveness of issue preclusion, sometimes called collateral estoppel, does not require the entry of a judgment, final in the sense of being appealable."); *East/West Venture v. Fort Lee,* 286 N.J.Super. 311, 669 A.2d 260, 271 (App.Div. 1996); *Restatement (Second) of Judgments* §§ 13 cmt. g., 27 cmt. k.[5]

 Although it was not final in the sense of permitting an appeal as of right, the summary judgment in favor of Dr. Young by the Superior Court involved the same claims, parties, relief requested, and factual allegations as those in the instant federal case. "[S]ummary judgment is a final judgment on the merits—sufficient to raise the defense of *res judicata* in a subsequent action between the parties." *Hubicki v. ACF Indus., Inc.,* 484 F.2d 519, 524 (3d Cir.1973).

In state court plaintiff charged that his medical care was constitutionally inadequate and sought punitive and compensatory damages, attorney's fees and costs. He raises the same claims and demands for relief in the instant case.[6] Both suits rely on the same witnesses and documents, namely the court orders and plaintiff's medical records. The material facts alleged in state court are the same as those alleged in this Court. A determination by the Superior Court Judge that there was no constitutional violation was essential to the grant of summary judgment in favor of Dr. Young. Having litigated the identical issues against Dr. Young to a summary judgment in the Superior Court, plaintiff is now precluded from once again seeking a determination of those very same issues in this case.

Even were the court to consider the claims against Dr. Young on the merits, there is simply nothing in the record to support a finding that his treatment of the plaintiff rose to the level of a constitutional violation. His failure to diagnose diabetes would be at most common law negligence and would not come close to the deliberate indifference required for an Eighth Amendment violation. *See infra* pp. 10–11.

### C. Remaining Defendants [7]

 Section 1983 provides for the imposition of liability on any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor,* 490 U.S. 386, 393–94, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989). To assert a claim successfully under § 1983, a plaintiff must allege a violation of a right secured by the Constitution and laws of the United States and that the alleged deprivation was committed by a person "acting under color of State law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 1732–33, 56 L.Ed.2d 185 (1978); *Shaw v. Strackhouse,* 920 F.2d 1135, 1142 (3d Cir.1990); *McArdle v. Tronetti,* 769

---

5. *Restatement (Second) of Judgments* § 13 provides:

> The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from merger and bar), "final judgment" includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.

6. In his state suit plaintiff also alleged simple medical malpractice. Summary judgment

against him on that claim would itself be sufficient to justify the application of collateral estoppel in this suit. An inability to prove common law negligence would a *fortiori* constitute a finding that there was no Eighth Amendment deliberate indifference.

7. Although only defendant Dr. Young has moved for summary judgment in the present case, we address the potential liability of the remaining defendants pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

F.Supp. 188 (E.D.Pa.1991), *aff'd,* 961 F.2d 1083 (3d Cir.1992). Although there is no heightened pleading requirement applicable to § 1983 claims, they must be pled with a "modicum of factual specificity ... identifying the particular conduct of the defendants that is alleged to have harmed the plaintiffs." *Ross v. Meagan,* 638 F.2d 646, 650 (3d Cir. 1981); *Darr v. Wolfe,* 767 F.2d 79, 80 (3d Cir.1985).

In the instant case plaintiff names as defendants the Camden County Board of Chosen Freeholders ("Board"); the Camden County Department of Corrections ("Department"); William C. Strang, Jr. ("Strang"), CCCF warden, corrections officer Captain M. Wright ("Wright"): and Camden County Freeholder Steven M. Petrillo ("Petrillo"), who apparently was the Freeholder charged with supervising the county jails. However, there is nothing in the complaint which could support a finding that any of these defendants violated plaintiff's constitutional rights.[8]

Plaintiff alleges that he was denied adequate medical care by medical staff personnel at CCCF. Thus, to succeed against the Board and the Department plaintiff must prove either a theory of vicarious liability such as respondeat superior, or allege direct conduct on which a constitutional violation might be based.

■■■■ There is no municipal respondeat superior liability under § 1983. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978).[9] A municipality can only be held liable if a municipal policy or custom caused the constitutional injury. *See Leatherman v. Tarrant County Narcotics Unit,* 507 U.S. 163, 165–67, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). Plaintiff has not alleged that he suffered harm due to the existence of a municipal policy or custom respecting inmates at CCCF, nor has he alleged any facts

which might support the finding of such a policy or custom. Even were the Court to stretch its reading of the complaint to allege a particular county policy concerning medical care at CCCF, the claim against the municipal defendants would still fail because the record is insufficient to support the constitutional injury required in a § 1983 action.

■■■■ The Eighth Amendment provides the constitutional basis for a § 1983 claim by prisoners alleging inadequate medical care. However, in order to support a claim, the inadequacy of the medical care must be evidenced by "deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Deliberate indifference may only be found where there has been an unnecessary and wanton infliction of pain. *See Estelle,* 429 U.S. at 104, 97 S.Ct. at 291. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend the "evolving standards of decency" in violation of the Eighth Amendment. *See id.* at 105–06, 97 S.Ct. at 292.

■■■■ The "deliberate indifference" standard is, in effect, a two-pronged test, requiring both that there be deliberate indifference on the part of prison officials and that the prisoner's medical needs be serious. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979); *Monmouth County Correctional Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987), *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). A medical need is "serious" when "it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth,* 834 F.2d at 347. A mere disagreement with the form of treatment does not rise to a constitu-

---

8. Plaintiff also asserts claims against various CCCF prison officials, nurses and physicians whom he designates only as John Does 1–6, Jane Does 1–5, and Richard Roes 1–5. However, plaintiff has of this date failed to identify these parties by name. In addition, the record does not indicate whether plaintiff has served these defendants with the complaint. Therefore, these claims are dismissed.

9. Respondeat superior liability based on the conduct of Dr. Young is precluded in any case because of the determination that he has no liability.

tional violation. *See Estelle*, 429 U.S. at 107, 97 S.Ct. at 292–93. Moreover, medical malpractice, even if it did occur, does not become a constitutional claim merely because the victim is a prisoner. *See id.* at 106, 97 S.Ct. at 292.

■■■■ Plaintiff presents no evidence to support either prong of the *Estelle* inquiry when applied to the prison officials. However, even if the Court were to find plaintiff's needs were serious at the time he allegedly was denied care, it is not evident that prison officials were deliberately indifferent to those needs. The Third Circuit has held that deliberate indifference may be shown "only where prison officials have actual knowledge of the need for treatment, yet intentionally refuse to provide appropriate care." *Monmouth*, 834 F.2d at 346. An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety: the official must be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Therefore, an official is not deliberately indifferent if "he fails to alleviate a significant risk that he should have identified." *Id.*

The record contains two pages of the CCCF medical log. *See* Pl. Motion for Summ. J., Ex. C. Two entries from that log, dated August 8 and August 16, indicate that CCCF jail personnel granted plaintiff's requests for medical attention. Additionally, the August 16 entry clearly indicates the medical staff treated plaintiff for his symptoms. Indeed, the August 3 entry demonstrates that plaintiff received medical attention even before his August 13 complaint.[10]

■■■■ Plaintiff also alleges that CCCF nurses failed to give him medication after returning to CCCF from the hospital. However, plaintiff fails to provide, with "a modicum of factual specificity," details about when the nurses denied him medication. The failure to provide medication could have been

the result of a decision based on sound medical judgment rather than inadequate medical care. Moreover, "[w]here the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim." *Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir.1978). In addition, a difference of opinion as to the best treatment for a particular condition falls short of the standard as well. *See Monmouth*, 834 F.2d at 346. Plaintiff presents no evidence that Dr. Young, the CCCF medical staff, or for that matter anyone else intentionally denied him medical care or were deliberately indifferent to his medical needs.

Dr. Young, the CCCF physician who rendered medical services to the plaintiff, has already been exonerated by the Superior Court. The involvement of Strang, Petrillo and Wright was even more attenuated and can hardly amount to *Estelle*'s willful indifference. About the only thread of an argument than can be divined from the complaint is that CCCF officials were constitutionally mandated to establish a policy of testing every new prisoner for adult onset diabetes. This court declines to stretch the Eighth Amendment that far.

■■■ Adult onset diabetes is a slowly progressing condition which manifests itself in a variety of symptoms (thirst, weight loss, frequent urination, weakness, nausea, headaches, etc.) which generally lead to diagnosis, as happened in this case. There are a large number of tests, often quite expensive, which can be made for a wide variety of health problems. The happenstance of arrest should not be constitutionally converted into a requirement for medical testing that an average member of the public would not undergo. This burden would be particularly onerous on county officials who often deal with short term detainees awaiting trial, as was the plaintiff in this case. To raise a jailers decision on the extent of medical screening of new prisoners to a constitutional

---

10. The August 3 medical log entry is illegible. Nevertheless, the entry evinces that the CCCF prison staff fulfilled plaintiff's requests.

dimension requires a far different record than is present in this case.[11]

### III. CONCLUSION

Because the claims raised against Dr. Young are identical to those adjudicated in state court, collateral estoppel (issue preclusion) bars their further pursuit herein. The Camden County Board of Chosen Freeholders and the Camden County Department of Corrections cannot be liable on the theory of respondeat superior, and plaintiff fails to allege any facts sufficient to demonstrate either a policy or custom, or any acts of commission or omission, which amount to the "deliberate indifference" of any defendant. Accordingly, summary judgment is granted in favor of the all defendants on all counts.

---

11. The court is aware that the rampant spread of tuberculosis in some prisons has led to routine testing of prisoners. *See Karolis v. N.J. Dep't of Corrections*, 935 F.Supp. 523 (D.N.J.1996). Suffice it to say that diabetes is not an easily transmitted infectious disease.